[No. 6,137.—Department No. 1.]

## BLAND *v.* THE SOUTHERN PACIFIC R. R. CO.

RAILROAD—EJECTMENT OF PASSENGER FOR FAILURE TO PAY FARE—RESCISSION OF CONTRACT.—The plaintiff entered the defendant's cars without procuring a ticket, and handed to the conductor the ticket fare. The conductor thereupon demanded of the plaintiff the additional amount required by the rules of the company to be paid by persons paying on the train, and, on the plaintiff's refusal to pay, ejected him from the cars, and then returned him his money. *Held*, that the conductor had no right to eject the plaintiff without first returning the money which he had paid.

APPEAL from a judgment for the defendant, in the Twentieth District Court, County of Santa Clara. BELDEN, J.

*D. M. Delmas*, for Appellant.

But two questions are presented in this case, viz:

*First.*—Can a common carrier both keep the money paid by the passenger as his fare, and still expel him for not paying his fare?

*Second.*—If the passenger has paid partial fare, does not his right to pay the balance continue as long as the carrier retains the partial payment?

It is submitted that to ask these questions is to answer them.

*J. E. Foulds*, and *S. W. Sanderson*, for Respondents.

The evidence is quite clear that at the time the two dollars was handed to the conductor, he informed plaintiff that the rules of the company required a further payment of twenty cents, so that whether the conductor put the money in his pocket, or held it in his hand, neither he nor the plaintiff supposed for one moment that it was received as full payment of the fare. There was, and could have been, no contract between them. " The minds of the parties," to use the language of the learned District Judge, " had not met upon one common proposition," and the money was held for a limited period by the conductor in order to give the plaintiff an opportunity to comply with the rules of the company, by paying the further sum required, and was returned to him when he was expelled from the train.

This was submitted to the jury as an issue, and by their verdict for the defendant, they found that it was not the intention of the plaintiff to pay full fare, or the intention of the conductor to receive the two dollars as full fare, when the same was paid to him.

A valid legal-tender must be of the *full amount*, and the exception of the conductor to the same was made *at the time*, in accordance with the provisions of § 2076 of the Code of Civil Procedure, and completely avoided it. There was, therefore, no legal obligation on him to return the same *before* putting the plaintiff off the train, and the instructions of the Court were in accordance with the law, as the plaintiff had not, by such payment, acquired any of the rights of a *bona fide* passenger.

McKINSTRY, J.:

The complaint alleges that while plaintiff was a passenger upon defendant's cars, the defendant unlawfully, maliciously, and wantonly assaulted, beat, bruised, insulted, and maltreated plaintiff, and with force of arms ejected him from said cars. The answer is a denial, and, as a further defense, that after the train had started upon a regular trip to San Francisco, plaintiff informed the conductor in charge of the train that he intended to and would be transported from San José to San Francisco; that the conductor demanded of plaintiff that he exhibit a ticket, or pay the regular and uniform price for fare; that plaintiff refused to exhibit a ticket or to pay the regular fare, and thereupon, and after a reasonable time had expired, after said demand and refusal, the plaintiff was, by the servants of defendant, removed from the cars, without force, or violence, or injury, or insult.

As appears from the bill of exceptions, the plaintiff entered the cars as a passenger at San José, in a train bound for San Francisco, but stopping at intermediate points, amongst others at Redwood City. That the plaintiff might have purchased a ticket at San José, but did not do so on account of arriving at the depot just as the train was starting. That when about four miles from the City of San José the conductor came to where

the plaintiff was sitting, and the plaintiff handed him $2 in silver. That the conductor put said money in his pocket, and informed plaintiff that the fare was $2.20—that the ticket fare from San José to San Francisco was $2, and the train fare was $2.20; that the ticket fare to Redwood City was $1, and the train fare $1.10. That when the plaintiff handed the conductor the $2, nothing was said by either party as to where the plaintiff was going or intended to go, but it was the plaintiff's intention to proceed on that train as far as Redwood City, and there lay over until the next train. That after the demand for the extra twenty cents by the conductor, the plaintiff refused to pay the same, and thereupon the conductor signaled the train to stop. When the train had slowed up, the plaintiff offered to pay said conductor the twenty cents demanded, and was then ready and willing and had the money in his hand to so pay; but the conductor refused to accept it, there being a regulation of the company (which regulation was duly given in evidence) forbidding the conductor from accepting fare from passengers after the train had been stopped on account of their refusal to pay fare. That when it had stopped, the conductor laid hands upon the plaintiff, pulled him out of his seat, and, having hold of his coat collar, pushed him out of the car. That as the plaintiff was in the act of alighting from the car, the conductor handed him back the two dollars; that the conductor did not at any time tender or offer to the plaintiff any money before that time. That the conductor did not give back to plaintiff the two dollars which he had paid, nor any part thereof, nor offer nor tender the same, nor any part thereof, nor any money whatsoever, until after he had pulled him out of his seat and pushed him out of the car as above stated.

The Court charged the jury as follows:

" Unless the jury believe from the evidence, that when the conductor received the $2 from the plaintiff he accepted and intended to accept it as full fare, the fact that the conductor did not return or offer to return said $2, nor any part thereof, to plaintiff, before putting him out of the car, is immaterial. In that view of the case, the conductor had a right to put the plaintiff out without returning the money."

And the Court further charged the jury as follows, to wit:

" If at the time the conductor received the $2 the minds of the parties met upon one common proposition, and it was the intention to pay full fare, and the intention of the conductor to accept said $2 as full fare, then it was the duty of the conductor to return or offer to return said $2 to the plaintiff, before putting him off for not paying the extra twenty cents; but unless the minds of the parties so met, the conductor might put the plaintiff off the car without returning or offering to return to him the said $2, or any part thereof."

The charge was erroneous. The conductor had no right to eject the plaintiff from the cars without returning the money which he had paid. Admitting that the regulation which forbade the conductor's accepting fare from a passenger after the train had been stopped on account of his refusal to pay fare, was a reasonable rule, this only makes it apparent that the money should have been returned before the train was stopped. There could be no stronger evidence that the sum paid was received as full fare than the fact that the conductor retained it. The passenger was justified in relying upon that fact until the money was repaid. The conductor certainly had no authority under any reasonable rule to eject the passenger and *keep the money*. The stopping of the train and the actual amotion of plaintiff were parts of a single act by which the servants of the defendant asserted a right to do that which they were not authorized to do while retaining plaintiff's money. If they could turn him out and then return the money he had paid, they could turn him out and not return the money at all. Indeed, it was argued by counsel for respondent that the servants of respondent possessed such power, and that the only redress to which plaintiff could resort was an action *for money had and received*. The whole matter was made to turn in the court below upon the hidden purpose of the conductor. Though the amount paid was paid by the plaintiff as and for his fare, and although the conductor received and pocketed the amount paid, still, if he did not *intend* to accept it as *full fare*, he had the right (as the jury were instructed) to confiscate the sum paid to the public use—or for his own benefit, or to that of his employers—and exclude the man who paid it from the cars. The question was not whether the plaintiff and defendant entered into a special agree-

ment whereby plaintiff was to be transported for the sum paid, but whether plaintiff had a right so to consider it until his money was repaid, and whether until that event the agent of defendant was justified in ejecting plaintiff. The jury was told that unless the conductor, who received the money, received it with the specific intent that it should constitute full payment for the service then being performed by defendant, " he had a right to put plaintiff out without returning the money "—" without offering him the said two dollars, or any part thereof."

If the conductor had demanded and received the two dollars as and for the full fare, or had agreed to transport the plaintiff for that sum, it is clear the latter could not have been ejected for non-payment of his fare. Yet the jury were told that " if the minds of the parties met upon one common proposition" to the effect that the two dollars were paid and received by the conductor as the full fare, the latter could not eject the plaintiff without first returning the money ; thus intimating that he could turn him out if he first returned that which had been received as full fare. This charge certainly tended to confuse the jurymen.

Judgment reversed, and cause remanded for a new trial.

ROSS, J., and MCKEE, J., concurred.