[S. F. No. 2988.    Department One.—November 25, 1904.]

# SAMUEL W. ELLIOTT, Respondent, v. SOUTHERN PACIFIC COMPANY, Appellant.

RAILROADS—LIMITED TICKET—RETURN TRIP—BREACH OF CONTRACT—
EXPIRATION OF TICKET—EXPULSION OF PASSENGER.—Where the
holder of a limited round-trip railroad ticket was prevented from
making the return trip within the time limited, owing to a railroad
strike, but did not attempt to use the return ticket immediately
after the strike was ended, nor within an extension of time granted
for six days thereafter, but made his return trip by other means,
his only remedy was for damages for breach of the contract, and
he could not use the return ticket after the expiration of the time
limited by the ticket and by the extension granted; and where he
presented no other ticket, and refused to pay his fare, he was
properly expelled from the train.

ID.—RETENTION OF LIMITED TICKET BY CONDUCTOR.—The fact that the
conductor improperly retained the limited ticket after it had
become void, and refused to return it to the plaintiff upon his de-
mand for such return, could not give the plaintiff any right to
remain on the train without the presentation of a valid ticket or
the payment of fare, and without any offer to pay fare in the event
of the return of the ticket. [Beatty, C. J., dissenting for reasons
expressed.]

ID.—STATEMENT BY ANOTHER TICKET AGENT AFTER SALE OF LIMITED
TICKET—WAIVER NOT SHOWN.—A mere statement by another ticket
agent, who did not sell the ticket, made at the return point ten days
after its sale, that the ticket would be good when the trains start,
could not operate as a waiver of the stipulation as to time in the
absence of proof of his authority to make such waiver, even if the
language used could be construed as a waiver.

ID.—UNSUPPORTED FINDINGS.—*Held,* that findings that the time of use
of the return ticket was reasonable, and was the first opportunity
for its use, and that plaintiff would not have purchased the ticket
had he known of the strike, and that in selling the ticket the rail-
road company committed a fraud upon the plaintiff, and that
plaintiff's consent to the contract was induced by fraudulent conceal-
ment, are unsupported by the evidence.

ID.—RIGHTS OF PARTIES TO LIMITED TICKET—INABILITY OF PERFORMANCE
—COMPLETION OF JOURNEY—FIRST OPPORTUNITY.—The rights of the
parties to a limited ticket are ordinarily limited by the terms of
the contract; but in case of inability on the part of the railroad
company rendering the strict performance of the contract unreason-
able, the passenger, if he avails himself of the first opportunity
to *complete his journey,* may so complete it under the contract,
although the time limited has expired.

Id.—First Occasion of Use no Criterion of First Opportunity.—The
fact that the plaintiff did not have occasion to use the return ticket
for one month after train service was resumed is no criterion as to
what was a reasonable time or the first opportunity.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

A. A. Moore, for Appellant.

The plaintiff could not recover, having no rights under the limited ticket after its expiration, and having tendered no other ticket or fare. (1 Fetter on Carriers, pp. 731, 737, and cases cited; *Russell* v. *Missouri etc. Ry. Co.,* 12 Tex. Civ. App. 627; *Moore* v. *Ohio River R. R. Co.,* 41 W. Va. 160; *Pennington* v. *Philadelphia etc. R. R. Co.,* 62 Md. 95; *Pouilin* v. *Canadian Pac. Ry. Co.,* 52 Fed. 197; *Western Maryland Ry. Co.* v. *Stocksdale,* 83 Md. 245, and cases cited; *Pennsylvania R. R. Co.* v. *Price,* 96 Pa. St. 256; *Boston etc. R. R. Co.* v. *Proctor,* 83 Mass. (1 Allen) 267;[1] *Hill* v. *Syracuse etc. R. R. Co.,* 63 N. Y. 101; *Texas etc. R. R. Co.* v. *McDonald,* 2 Wilson Civ. Cas. Ct. App. (Tex.) 163; *Grogan* v. *Chesapeake etc. Ry. Co.,* 39 W. Va. 415; *Gulf etc. Ry. Co.* v. *Looney,* 85 Tex. 158;[2] *Pennsylvania Co.* v. *Hine,* 41 Ohio St. 276.) The fact that the void limited ticket was not returned by the conductor on demand does not affect the right of the plaintiff to ride without paying his fare. (*Townsend* v. *New York Central etc. R. R. Co.,* 56 N. Y. 295;[3] *Rahilly* v. *St. Paul etc. Ry. Co.,* 66 Minn. 153.) The sole effect of the failure by defendant to comply with its contract for the return trip was to give to plaintiff a cause of action for breach of contract. (*Tayler* v. *Nassau Electric Ry. Co.,* 32 App. Div. 486, 53 N. Y. Supp. 5; *Townsend* v. *New York Central etc. R. R. Co.,* 56 N. Y. 295.[3])

George Lezinsky, for Respondent.

The defendant being unable to fulfill its contract, plaintiff had the right to demand performance within a reasonable

---

[1] 69 Am. Dec. 729.        [2] 15 Am. Rep. 419.

[3] 34 Am. St. Rep. 787.

time.   (*Auerbach* v. *New York Central etc. R. R. Co.,* 60 How. Pr. 382; *Gulf etc. R. R. Co.* v. *Wright,* (Tex. Civ. App.) 30 S. W. 294; *Little Rock etc. R. R. Co.* v. *Dean,* 43 Ark. 530.[1])   The statement of the ticket agent bound the defendant.   (*Nelson* v. *Long Island R. R. Co.,* 7 Hun, 142.)   The plaintiff had the right to ride until the ticket was returned to him upon demand.   (*Gulf etc. R. R. Co.* v. *Copeland,* 17 Tex. Civ. App. 55; *Vankirk* v. *Pennsylvania R. R. Co.,* 76 Pa. St. 66;[2] *Bland* v. *Southern Pacific R. R. Co.,* 55 Cal. 573.[3])   The scope and extent of the ticket was governed by the facts and circumstances surrounding it.   (*Northern Pacific R. R. Co.* v. *Pauson,* 70 Fed. 585; *New York etc. R. R. Co.* v. *Winton,* 143 U. S. 60.)

ANGELLOTTI, J.—Defendant appeals from a judgment rendered in favor of plaintiff for the sum of seven hundred dollars, and from an order denying its motion for new trial.   The action was for damages alleged to have been suffered by plaintiff by reason of his alleged wrongful and forcible expulsion from a train of defendant on August 13, 1894, on which train, it was alleged, the plaintiff was a passenger.

The case was tried without a jury.   The record shows the following facts:   On August 13, 1894, the plaintiff boarded defendant's train at the Oakland pier, Alameda County, for the purpose of being transported thereon to Pleasanton, in the same county.   He presented to the conductor for his passage on such train a round-trip ticket "From Pleasanton to San Fran. and return," which he had purchased from defendant's ticket agent at Pleasanton on July 3, 1894, at a reduced rate,—to wit, one fare for the round trip, viz., $1.10,—and which he had used on July 3d in traveling from Pleasanton to San Francisco.   This ticket was distinctly marked upon its face "Void after July 6, 1894," and this limitation and the fact that the ticket was sold at a reduced rate were known to plaintiff at the time he purchased the ticket.

The conductor at once handed the ticket back to plaintiff, informing him that it was no good—that it had expired.   The

[1] 51 Am. Rep. 584.          [3] 36 Am. Rep. 50.
[2] 18 Am. Rep. 404.

plaintiff told the conductor that he thought he was entitled to ride on it, that he had bought and paid for it, and that it was no fault of his that he had not ridden on it. The conductor then left the plaintiff, but returning presently, said, "Let me see that ticket," and upon plaintiff handing it to him, said, "That is no good," and put it in his pocket. He further said, "You will either have to pay your fare or get off the train at San Leandro." Plaintiff said, "Then give me back my ticket." The conductor said, "Well, I will look out for that ticket." When near San Leandro, he returned and said, "Now you will have to get off here or pay your fare." The plaintiff said, "I don't propose to do either until you give me back my ticket." The conductor said, "I will take care of the ticket; you will have to get off the car." The plaintiff said, "I don't propose to do either." The conductor said, "I will put you off," and plaintiff said, "Bring your crowd." The foregoing statement as to what took place on the train is from plaintiff's testimony, and is as favorable to him as any of the evidence given.

The plaintiff forcibly resisted all attempts to eject him, and was by means of force rejected by defendant's servants from the train, but no more force or violence was used than was reasonably necessary to effect the ejection. "Neither his [plaintiff's] bodily suffering nor his mental suffering were very great nor were his bodily injuries serious."

The foregoing statement of facts is in accord with the findings of the court, except in so far as certain findings may be capable of being construed as showing that the conductor received the ticket as in any degree entitling plaintiff to travel, or without notifying plaintiff that it was of no value and that he could not honor it, or that plaintiff intimated in any way that he would pay his fare or present a valid ticket if the other ticket should be returned. In so far as the findings may intimate any of these things, they are not supported by the evidence, as is fully shown by plaintiff's testimony on this subject, which has already been stated. The case in this respect is simply one where the conductor repudiated as absolutely void, and expressly refused to honor for passage, a ticket that was absolutely void, but after so expressly refusing to honor it nevertheless took it into his possession and retained it.

It was further found by the court substantially as follows:—

From July 5, 1894, to July 13, 1894, defendant, notwithstanding its desire and attempts to operate its passenger-trains between Oakland pier and Pleasanton, was absolutely prevented from doing so by the forcible violence of a large body of men, the trouble having been caused by a "strike" of "engine firemen in its employ." On July 5 and 6, 1894, it did not operate any of its ferry-boats between San Francisco and Oakland pier. It did, however, operate a ferry-boat between San Francisco and a place in Oakland near a station on the railroad from Oakland pier to Pleasanton. On both days the plaintiff went to the proper place in San Francisco for the purpose of taking passage, and learned that defendant was not operating its boats or trains. He, however, on July 6th took passage on the ferry-boat running to Oakland, using his ticket for that purpose, and, having arrived at the landing place in Oakland, proceeded upon his journey to Pleasanton, where he arrived the same day, walking a part of the way, and riding the remainder of the way upon conveyances not operated by the defendant.

Train service was resumed on July 13, 1894, and defendant, by its order to its conductors, extended the time within which plaintiff and others similarly situated might use tickets of like character for return passage about six days, which period elapsed in the month of July, 1894, but the fact of such extension was not communicated to plaintiff.

The court further found that such period of extension was not a reasonable period; that the first opportunity that plaintiff had of using said ticket for transportation between Oakland pier and Pleasanton was on August 13, 1894, and that this was a reasonable time within which to use the same. These findings are attacked as not being sustained by the evidence, and the attack is, in our opinion, well founded. Six days was twice the original life of the ticket, and certainly much more than sufficient to enable one who had come from Pleasanton to San Francisco upon such a ticket, to make his return journey. August 13th was not the first opportunity that plaintiff had of using said ticket, for the train service had been resumed on July 13th and continued uninterrupted thereafter. The only basis for a finding that August 13th was the date of plaintiff's first opportunity to use the ticket is

the evidence of plaintiff that after July 6th he was not again in San Francisco or Oakland until August 13th; in other words, that he did not again have occasion to go from San Francisco or Oakland to Pleasanton until that time. This cannot, in a case of this character, be the criterion as to what was a reasonable time or the first opportunity.

The court further found that at the time defendant sold the ticket to plaintiff it knew, or had good and sufficient reason to know, from facts and circumstances then existing and within its knowledge, that it would be or might be unable to transport plaintiff upon said railroad on July 5th or 6th, that it did not communicate these facts and circumstances to plaintiff, that plaintiff did not know thereof, and that if he had known thereof he would not have purchased the ticket. There is absolutely no evidence to sustain the finding embraced in the last clause.

The court also found that in selling the ticket under such circumstances the defendant committed a fraud upon plaintiff.

The plaintiff testified that on July 5th, when, at San Francisco, he found that the trains were not being operated, he asked a man who was stationed at the ticket-window of defendant to give him his money back. The man told him that his ticket was good until the next day, and in response to plaintiff's inquiry as to what would happen if the trains were not then running, said: "It will be good when they do start."

It further appears that on August 13th, plaintiff, in San Francisco, purchased a ticket from San Francisco to Pleasanton, which, however, he never showed or offered to the conductor.

The foregoing statement presents all the facts necessary to a discussion of the legal questions involved.

There can be no question as to the right of a railroad company to limit the time within which a ticket sold at reduced rates may be used. As has been said, the passenger, by accepting and using such a ticket, makes a contract with the company according to the terms stated, and the reduction in the fare is the consideration for the contract. The passenger cannot take advantage of the reduction of the rate, and reject the terms on which alone the reduction was made. (See 1 Fetter on Carriers of Passengers, secs. 285, 289; 4 Elliott on

Railroads, secs. 1598, and cases cited therein.)   Plaintiff's counsel, recognizing this now well-settled doctrine, admitted on the trial that defendant had a right to limit the ticket, that, under ordinary circumstances, the ticket in question would have expired on July 6th, and that if on July 5th and 6th, defendant had been ready to carry the plaintiff, he would have had no rights under the ticket, if he had failed to avail himself of the opportunity to be transported according to its terms.

It is, however, contended that the inability and failure of the defendant to perform its contract of carriage within the time limited, extended the time and gave to the plaintiff the right to *demand performance* "at a reasonable subsequent time"; and also that the limitation was void by reason of fraudulent concealment by defendant of facts and circumstances which it knew or ought to have known at the time of the making of the contract, and which it failed to communicate to plaintiff, and that therefore plaintiff was entitled to use the ticket within a reasonable time, "the same as if no such limitation was set upon the ticket at all."

We know of no principle of law or decision of any court that would warrant the application of these suggested rules to the circumstances of this case.   The contract on the part of defendant railroad company was that it would, in consideration of the $1.10 paid, not only carry the holder of the ticket from Pleasanton to San Francisco, but also carry him back from San Francisco to Pleasanton, *on any day not later than July 6th.*

Under its terms, the holder was entitled to be transported by the railroad company when he presented himself for passage on July 6th, the last day of the life of the ticket.   The company failed to perform the obligation imposed on it by the contract, and it may well be that this failure on the part of the company constituted a breach of contract on its part, and that it became liable to the holder of the ticket for all damages proximately caused by such breach of contract.   Defendant being unable to perform its contract, the holder of the ticket thereupon made his return trip to Pleasanton without the aid of the company and by other means.   He thus completed his journey and measured his damage.   Whatever damages were caused by the failure of the railroad company

to carry him back on or before that day had then accrued, and his cause of action against the company, by reason of the breach of contract, was then complete. It had failed to perform its contract to transport him from San Francisco to Pleasanton; and could not thereafter perform it according to its terms.

The railroad company had never undertaken to carry him on any other journey than that for which the contract was expressly made, and no such liability could be imposed upon it in the face of its express contract to the contrary. The plaintiff could not, because of the failure of the railroad company to perform its contract, make a new contract for the company. This was not his remedy for the breach of contract. The law gave him full and adequate remedy by way of action for damages for such breach, and this, under the circumstances of this case, was his sole and exclusive remedy.

In this connection, it would seem entirely immaterial whether or not there was any fraudulent concealment by the company, at the time of the making of the contract, of facts from which it might be inferred that it might not be able to fully perform the contract according to its terms. Such concealment could not operate to make a new contract between the parties. For it, if it existed, the law gave plaintiff certain remedies, but the making of a new and different contract by him alone was not one of them. The record, however, does not show that plaintiff's consent to the contract was induced by any fraudulent concealment. The finding to that effect, in response to the issue made by the pleadings, finds no support whatever in the evidence. By express provision of our Civil Code, consent to a contract is deemed to have been obtained through fraud "only when it would not have been given had such cause not existed." (Sec. 1568. See, also, *Colton* v. *Stanford,* 82 Cal. 351, 399.[1]) So the question as to the effect of fraud is entirely eliminated.

It has been frequently said, in effect, that a limitation as to the time within which the passage contracted for must be made, must, in view of all the facts and circumstances existing at the time the contract is entered into, be reasonable, and that if it be unreasonable, the passenger, availing himself of

[1] 16 Am. St. Rep. 137.

the first opportunity *to complete his journey,* may so complete it under the contract, although the time stipulated therein has expired. But the rule here suggested, we are satisfied, goes no further than above stated. Thus, in 2 Woods on Railway Law, 1403, the instances suggested to support the statement that conditions of this character must be reasonable or they will have no validity, and if impossible of performance, they are unreasonable, are, first, that if a ticket is issued from A to B and return, "good for this day only," and there is no train which leaves B on the return trip to A after the arrival of the train, the condition would be unreasonable, and the holder would be entitled to a return passage to A on the first train leaving B for A on the next day, and, second, if a ticket is issued from A to B, "good for this day only," and by some accident to the train the trip is not completed until the next day, the ticket is good for the balance of the passage. Elliott says that the limitation must be reasonable, and in the note thereto, that if the company runs no train on the day to which it is limited, or if it is a round-trip ticket and there is not time to make the round trip within the period of limitation, or if it is a through ticket over connecting lines and the time is too short to reach the last line, where there is no delay within such period, "we suppose the traveler could take the first train on the next day." (4 Elliott on Railroads, sec. 1598, and note.)   Fetter says that the time limited must allow sufficient time "for a person using ordinary diligence to accomplish the trip," and quoting from *Little Rock etc. Ry. Co. v. Dean,* 43 Ark. 529,[1] a case strongly relied on by plaintiff, says: "The carrier must afford a purchaser of a limited ticket the necessary facilities for accomplishing his journey within the stipulated time, and, upon his failure to do so, he is not in position to treat the contract of carriage as forfeited, and demand a repayment of fare for the same passage, at least, if the ticket holder avail himself of the first opportunity *to complete his journey,* after the expiration of the time limited." The italics are ours. The case cited was one where the passenger having a through ticket over connecting lines, took the first train on defendant's road that left the place after his arrival therein, on a train of the connecting road.

*Gulf etc. R. R. Co.* v. *Wright,* (Tex. Civ. App.) 30 S. W.

[1] 51 Am. Rep. 584.

294, cited by plaintiff, was a case where the stipulation on the ticket was that it should be entirely used within three days after being stamped for the return trip, and the passenger, traveling diligently, failed to finish his journey within that time owing to delays in the movements of trains on the part of the railroad company, and it was held that he could *finish his journey.*

The only other case cited by plaintiff at all applicable upon this point is that of *Auerbach* v. *New York Central etc. R. R. Co.,* 60 How. Pr. 382, where, in deciding for the railroad company, the court said in effect that where the agreement is that one must use his ticket for a continuous passage prior to a certain date, and begins his continuous journey in time to reach his destination in the usual course of travel, but is prevented by delays occurring upon the railroad from finishing his journey in the lifetime of the ticket, he may continue his journey to its end. Although this was mere *obiter,* the court holding that the plaintiff was not entitled to recover for the reason that he did not commence his journey in time to reach his destination in the usual course of travel, within the lifetime of the ticket, it is in line with the statements heretofore mentioned as made in the text-books and the cases already cited. It may be noted that the judgment in this case was reversed by the New York court of appeals, upon the theory that the passenger did commence his journey on defendant's road in time, and that having so commenced it, he was entitled, under his contract, to pursue it continuously to the end, notwithstanding that the time expired while he was still on the train, pursuing such journey, the case, in this respect, being similar in principle to *Lundy* v. *Central Pacific R. R. Co.,* 66 Cal. 191.[1] (*Auerbach* v. *New York Central etc. R. R. Co.,* 89 N. Y. 281.[2]) However, there is nothing in the opinion in *Auerbach* v. *New York Central etc. R. R. Co.,* 60 How. Pr. 382, or in the other cases cited by plaintiff, or in the views of the text-book writers, or in the cases cited in the text-books, as to unreasonable limitations as to time, that supports the position to which plaintiff is forced by the circumstances of this case,—viz., that because the railroad company failed through its own fault or inability to transport him upon his return journey, and he was thereby

[1] 56 Am. Rep. 100.          [2] 42 Am. Rep. 290.

put to the trouble and inconvenience and expense of returning
without its aid and by other means, and he did so return,
he may enforce a passage under the original contract upon
another journey taken by him at a subsequent time, and after
the expiration of the time specified in the contract, provided
he does so within, as plaintiff says, "a reasonable time."

There is a plain distinction between the case where the
passenger seeking diligently to pursue his journey to its end
is prevented from so doing within the stipulated time by
reason of the fact that the time allowed was too short to
admit of the accomplishment of the trip, or by some fault or
inability of the railroad company, and takes advantage of
the first opportunity afforded by the company to complete
such journey, and such a case as is here presented. In the
former case the passenger is diligently proceeding under his
original contract, availing himself of all the means offered by
the railroad company to complete his journey, and the limi-
tation as to time is ineffectual against him only to such an
extent as is necessary to enable him to reach his journey's
end. In this case the plaintiff was not proceeding under
the original contract at all, but was simply seeking by reason
of defendant's breach of such contract, to enforce a passage
upon a subsequent and distinct journey, commenced long
after the expiration of the time stipulated in the contract.
We know of no principle of law that would warrant him in
so doing.

There is nothing in the suggestion that the statement of
defendant's employee at the San Francisco ticket-office on
July 5th, in response to plaintiff's query as to what would
happen if the trains were not running on July 6th, that "it
will be good when they do start," operated as a waiver by
the railroad company of the stipulation as to time. It will
be observed that this is not a case of a statement made by
an employee of the company at the time of the sale of the
ticket and the making of the contract, but if the statement
was made at all (there is no finding of the court upon the
subject), it was made two days after the contract was entered
into, and by another employee, who was not shown to have
any authority to make such a waiver, even if the language
used could be construed as a waiver at all.

The only case cited by plaintiff to sustain his contention

on this point is that of *Nelson* v. *Long Island R. R. Co.,* 7 Hun, 142, where one of the three justices participating held that the statements of the ticket agent selling the ticket were admissible for the purpose of determining what the original contract was.  Such cases are, of course, not in point.

It is further contended that the defendant could not, while retaining the void ticket offered by plaintiff, legally demand the delivery of any other ticket or the payment of fare, and could not legally eject plaintiff for failure to comply with such demand.

As already stated in our discussion of the findings of the court on this subject, the conductor expressly repudiated this ticket as absolutely void, and notified the plaintiff that he could not honor it.  It was as a matter of fact entirely without value.

We are not at all satisfied that the conductor had any right to retain this ticket, but we cannot see how an improper retention of a worthless ticket by the conductor could give the plaintiff any right to remain on the train without the presentation of a valid ticket or the payment of, fare.  He had not exhibited or surrendered a valid ticket, he had given nothing of value to the conductor, and he had refused and continued to refuse to pay his fare.  The statute provides that if any passenger refuses to pay his fare, or to exhibit or surrender his ticket, when reasonably requested so to do, he may be ejected at any usual stopping-place or near any dwelling-house.  (Civ. Code, secs. 487, 2188.)  The conditions under which he might lawfully be ejected had thus arisen, and the improper retention of the worthless ticket could not impair the right of the railroad company to prevent him from riding without payment of fare.  Upon this question the case of *Rahilly* v. *St. Paul etc. R. R. Co.,* 66 Minn. 153, is directly in point.  The court there said: "We are all agreed that, even if the conductor had no right to take up the ticket, this would not give the plaintiff any right to refuse to pay his fare until and unless the ticket was returned. Having no right to ride on the ticket, it was his duty to pay his fare or leave the train, and then pursue his remedy against the defendant for wrongfully withholding the ticket from him."

Plaintiff cites the case of *Vankirk* v. *Pennsylvania R. R. Co.,*

76 Pa. St. 66,[1] which is somewhat in line with his contention on this point. The case, however, differs from this in the fact, apparently considered material by the Pennsylvania court, that the plaintiff there offered to pay his fare, provided the ticket already delivered was returned to him. The opinion there proceeded upon the theory that the conductor had no right to demand anything in addition to the accustomed fare, and the plaintiff having offered to pay this upon the return of the ticket improperly retained, the conductor's refusal to return it was a demand for something more than the accustomed fare. In the case at bar, the plaintiff did not offer to pay his fare in the event that the ticket was returned. He simply said, in effect, that he would neither pay his fare nor get off the train until the ticket was returned, and the evidence clearly shows that he intended to ride upon the worthless ticket or be ejected from the train.

The case of *Bland* v. *Southern Pacific Co.,* 55 Cal. 570,[2] cited by plaintiff, is clearly not in point. There a passenger from San Jose for San Francisco, who had failed to purchase a ticket, gave to the conductor, when the train was about four miles out of San Jose, two dollars, which was the regular ticket price to San Francisco. The conductor put this in his pocket, and then demanded twenty cents additional, the extra amount due for fare to San Francisco when a passenger failed to procure his ticket at the station. The passenger refused to pay this, and the conductor then and there stopped the train, and, although the plaintiff then offered to pay the twenty cents additional, ejected him, without first returning the money already paid. It was said by the court that the conductor certainly had no authority to eject the passenger and keep the money paid and received as fare, and that the stopping of the train and the actual amotion of the plaintiff were parts of a single act by which the servants of the defendant asserted a right to do that which they were not authorized to do while retaining plaintiff's money. This was clearly right, but the distinction between this case and that is obvious.

The judgment and order denying defendant's motion for a new trial are reversed.

Van Dyke, J., and Shaw, J., concurred.

---

[1] 18 Am. Rep. 404.          [2] 36 Am. Rep. 50.

A rehearing was denied December 24, 1904, on which Chief Justice Beatty delivered the following dissenting opinion:—

BEATTY, C. J.—I dissent from the order denying a rehearing of this case. I think the case of *Bland* v. *Southern Pacific Co.*, 55 Cal. 570,[1] is very clearly in point. The circumstances were different, but the cases cannot be distinguished in principle. The ticket which the conductor took and retained was the property of the plaintiff and had a legal value,—it was evidence of a broken contract,—and on the principle of the Bland case the conductor had no right to eject the plaintiff without first returning the ticket. This is said, of course, upon the assumption that the plaintiff's account of the transaction was true. It was contradicted by the conductor, but here we must accept the evidence which supports the findings of the trial court.