[Civ. No. 115. Fourth Appellate District.—September 23, 1930.]

FRANK ELLIOTT et al., Respondents, v. FEDERATED FRUIT AND VEGETABLE GROWERS, INC. (a Corporation), Appellant.

Cosgrave & Barstow and Bradley & Bradley for Appellant.

H. A. Savage and V. D. Manville for Respondents.

WARMER, J., *pro tem.*—This is an appeal from a judgment in favor of plaintiffs.' The action arose out of an oral contract for the sale of grapes. Plaintiffs are growers and shippers of grapes. Frank Elliott, one of the plaintiffs and respondents, made the contract in question on behalf of the respondents. Plaintiffs and respondents operated a packinghouse at Cutler, Tulare County, Fresno district, during the summer of 1927. Appellant and defendant is a large corporation marketing fruit and vegetables and it maintains offices in many of the large cities of the country, its western office being in San Francisco. During the summer of 1927 R. C. Campbell was district representative for appellant in the Fresno district and made the contract here in question on behalf of the appellant. During the summer of 1927 the said Elliott asked the said Campbell if defendant (appellant herein) could market some of their grapes and Campbell stated it could. Nothing more was said or done until October, 1927, when the transaction here in dispute arose. On October 19, 1927, Mr. Campbell called Mr. Elliott on the phone and told him appellant had an order for five cars; 1 U. S. juice malagas, and that they wanted the same packed in No. 2 lugs with an average weight of about 22 pounds. Elliott explained that he had had trouble with f. o. b. orders before and asked if appellant had *bona*

*fide* orders for five cars. If so, they would go ahead and pack and ship the grapes. They shipped the first car on October 20, 1927, and the last and fifth car on October 24, 1927. Appellant claims that the contract was made October 20, 1927, when Campbell went to the packing-house of the respondents. During the shipping period Mr. Campbell was at the packing-house of plaintiffs and respondents practically every day and told them there was trouble about the weight of the lugs and requested them to keep the weight down to as near 22 pounds per lug as possible. Elliott agreed to do so as far as possible, stating that the grapes were being packed in the field and that it would be difficult to do so, and gave orders to the packers to reduce the pack a little. Again, on October 24, 1927, Campbell told the respondents herein that appellant was having trouble with the weights, but Mr. Hart would take care of them all right. Mr. Hart was the western manager of appellant. As soon as a car was loaded it was billed out and the manifest, bill of lading and weight tags mailed to Campbell and by him forwarded to the office of appellant in San Francisco. Appellant wired to their offices in Cleveland and St. Louis to the effect that it was filling their orders by the shipment of the said five cars, giving the usual information as to car number, routing and weights. The Cleveland and St. Louis offices of the appellant advised refusal of cars, assigning as their reason for the said refusal the failure of the grapes to comply with the weight specifications of about 22 pounds per lug. The average weight per lug actually packed was: First car, 24.2 pounds per lug; second car, 23.7 pounds per lug; third car, 25.1 pounds per lug; fourth car, 24 pounds per lug; fifth car, 24.4 pounds per lug. The persons placing these orders made a deposit of $100 for each car with the appellant's eastern offices at Cleveland and St. Louis.

Upon refusal to accept the cars as shipped the deposits were ordered returned by the appellant.

Thirty-five to thirty-nine days after the last car moved was the first time that respondents herein received any notice of the disposition of the five cars or any notice that the appellant had not placed the said five cars on specific orders.

Mr. Elliott then went to the San Francisco office of appellant and discussed the deal with Mr. Hart, Mr. Hart

saying, among other things, and in answer to an inquiry by Mr. Elliott concerning the weight of said cars, that "everything went wrong" and "he sometimes had to say that they had orders when in fact they had no orders". There is in evidence certain orders which appellant claims were orders for these cars. First, the Cohen order, one car, dated October 18, 1927; second, Polinsky order, one car, dated October 20, 1927; third, La Presti & Co. order, two cars, dated October 20, 1927; fourth, the Dankner order, three cars, dated October 20, 1927.

Appellant claims that there is not evidence sufficient to support the jury's implied finding that the grapes were procured by means of fraud. ■ The appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account as well all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the findings. (*Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157].) ■ There is a conflict in the evidence as to whether the contract was made on the nineteenth day of October, 1927, or on the twentieth day of October, 1927. If the contract was made on the nineteenth day of October, 1927, the appellant did not have *bona fide* orders as represented. If made on the twentieth day of October, 1927, the defendant did have such *bona fide* orders. The appellate court, under the rule above stated, must adopt the evidence most favorable to sustaining the verdict. The contract, therefore, must be held to have been made on the nineteenth day of October, 1927, when the appellant did not have *bona fide* orders on which to place the said five cars of grapes.

"By express provision of our Civil Code consent to a contract is deemed to have been obtained through fraud 'only when it would not have been given had such cause not existed'. Sec. 1568." (*Elliott* v. *Southern Pac. Co.*, 145 Cal. 441, 448 [68 L. R. A. 393, 79 Pac. 420, 423].) ■ In order to recover for false representations, the representation "need not be the sole cause of the contract, but it must be of such nature, weight and force that the court can say 'without it the contract would not have been

made' ''. (*Craig* v. *Shea*, 45 Cal. App. 351 [188 Pac. 73, 74].)

■ It appears that because of some past trouble respondents were unwilling to sell grapes *except* on *bona fide* orders, and that the grapes would not have been shipped had the respondents known that the appellant at the time the agreement was entered into did not in fact have *bona fide* orders for the same. Such representation was a . representation of a material fact, without which the contract would not have been entered into. Therefore the contract must be held to have been procured by fraud. ■ Appellant next presents the question, is the evidence sufficient to sustain the implied finding of the jury that appellant converted respondents' grapes to its own use? Fraud in the contract having been found, what effect, if any, does that fact have upon conversion? ''The wrongful taking of possession of personal property, either by force or fraud, generally amounts to a conversion.'' (26 R. C. L. 1110; see, also, *Baird* v. *Howard*, 51 Ohio St. 57 [46 Am. St. Rep. 550, 22 L. R. A. 846, 36 N. E. 732].)

''Upon principle, as well as authority and practice, a tortious taking of another's chattel is a conversion. It is the exercise of an act of ownership, an appropriation of another's property, which is synonymous with conversion.

''In 2 Esp. N. P. 580, the law is laid down thus: 'When the taking of goods has been tortious, an actual conversion to the party's own use is not necessary to maintain this action.' It would have been more correct to say, that where there has been a tortious taking, there has been a conversion.'' (*Woodbury* v. *Long*, 8 Pick. (Mass.) 543 [19 Am. Dec. 345].)

The jury having found that the contract was procured by fraud, the grapes having been delivered to the appellant under the contract so procured, the taking of the grapes of respondents constituted a wrongful taking of possession of the said grapes and was, therefore, a conversion.

■ Appellant next presents the claim that the judgment should be reversed because the appellant had the consent of the respondents to market the grapes. With this contention we cannot agree. There is nothing in the record, looking at the same in a light most favorable to the respondents, to justify the same, except the statement to the

effect that "Mr. Hart will take care of you". This, of itself, and more particularly viewed in the light of the testimony, could not constitute a consent, and especially could not do so when the respondents had not been informed that the shipments had been refused and had not been informed that the orders had been canceled.

The holding that the wrongful taking of possession of the grapes was conversion makes it unnecessary to discuss the point presented by the appellant that an emergency existed.

Appellant very earnestly urges that this cause must be reversed because of the reading of a letter from one of the attorneys of record for the respondents before the jury, even though the objectionable parts thereof were afterward ordered stricken out by the court. ■ Where, in the course of the trial, irrelevant testimony is offered by one party, and objected to by the other, and admitted by the court, and the court afterward strikes out the testimony, and directs the jury to disregard it, the error in admitting the evidence is cured, and affords no valid grounds for reversing judgment. (*Ward* v. *Preston,* 23 Cal. 469; *McCollum* v. *Barr,* 38 Cal. App. 411 [176 Pac. 463]; 24 Cal. Jur. 762.) ■ In the instant case the court instructed the jury as follows: "The jury will not regard any of the statements in that letter except that there was a request for the orders received for these five cars, as having anything to do with this case, and this is received only for the purpose of showing the reply to it made by the witness on the stand. All the other matters are not evidence and will not be considered as evidence." Without doubt the letter was objectionable, in the most part immaterial, incompetent, irrelevant and self-serving and has no place in the record. The court ordered the jury to disregard the same and the jury must be presumed to have followed the court's instructions. The error was rendered harmless.

■ The measure of damages on conversion of personal property is set forth in section 3336, subdivision 1, of the Civil Code, as follows: "The value of the property at the time of the conversion with the interest from that time, or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between conversion and the verdict, without interest, at the

option of the injured party.'' The market reports of October 24, 1927, showing sales of $27.50 to $31 per ton, also the testimony of the witness Elliott and the witness Wileman, that the market values on the dates of October 20 to October 24, 1927, were from $30 to $35 per ton f. o. b. Cutler, the shipping point. The grapes having been delivered to appellant between October 20, 1927, and October 24, 1927, both inclusive, is sufficient to establish the market value of the grapes at the time they were converted by the appellants.

For the foregoing reasons the judgment is affirmed.

Marks, Acting P. J., and Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 20, 1930.