Filed 11/03/23  Upside Health v. Cabeau CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| UPSIDE HEALTH, INC.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CABEAU, INC., et al.,<br><br>    Defendants and Respondents. | B323155<br><br>Los Angeles County<br>Super. Ct. No.<br>20VECV01399 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Shirley K. Watkins, Judge. Affirmed in part and reversed in part with directions.

Law Offices of Michael C. Murphy, Michael C. Murphy and Michael C. Murphy, Jr., for Plaintiff and Appellant.

Salomons Law Group and Gary K. Salomons for Defendant and Respondent David Sternlight.

# INTRODUCTION

Upside Health, Inc. (Upside) sued Cabeau, Inc. (Cabeau) and David Sternlight, Cabeau's chief executive officer, for various breach of contract and tort claims after Cabeau failed to pay for several hundred thousand health masks that Upside sold to Cabeau. Upside appeals from the judgment dismissing its claims against Sternlight after the trial court sustained without leave to amend Sternlight's demurrer to Upside's fourth amended complaint.[1] Upside argues the court erred in sustaining the demurrer because Upside alleged sufficient facts to support its causes of action for conversion, promissory fraud, and aiding and abetting against Sternlight. Upside also seeks leave to add a new cause of action for fraudulent concealment against Cabeau and Sternlight.

Although the pleading did not allege sufficient facts to state a claim for conversion, it adequately pled claims for promissory fraud and aiding and abetting against Sternlight. We thus affirm in part, reverse in part, and remand for further proceedings. We deny Upside's request to add a cause of action for fraudulent concealment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Purchase Agreement

Upside is a health mask supplier. In June 2020, an Upside representative contacted Will Fan, a Cabeau employee, to inquire whether Cabeau was interested in purchasing masks from

---

[1] The court overruled in part a separate demurrer filed by Cabeau, who is not a party to this appeal.

Upside. The next month, an Upside representative quoted Fan a price for the masks and stated that Upside would agree to accept payment from Cabeau within 30 days of when the masks were shipped. Fan told the representative that he needed to speak to Sternlight before Cabeau could agree to purchase any masks from Upside.

On July 13, 2020, Fan told Upside that Cabeau "decided to onboard with [Upside] as Cabeau's supplier" and would submit a purchase order for masks. Fan confirmed that Cabeau had the ability to pay for Upside's masks. According to Upside, Sternlight "instructed" Fan to assure Upside that Cabeau could meet Upside's terms of payment.

On July 30, 2020, Fan and another Cabeau employee sent Upside a purchase order for 700,000 health masks at a cost of 23 cents per mask. Upside and Cabeau agreed that Upside would "invoice Cabeau for the goods, the goods would be shipped to Cabeau's customer (the State of Colorado), and Cabeau would pay [Upside] for the product shipped within 30 days."

In August 2020, Upside shipped 700,000 masks to the State of Colorado in two shipments, one containing 500,000 masks and the other containing 200,000 masks. On August 3, Upside sent Cabeau a $115,000 invoice for the first shipment of masks. On August 18, 2020, the State of Colorado paid Cabeau $175,000 for the first shipment.

On August 21, 2020, Upside sent Cabeau a $46,000 invoice for the second shipment of masks. On August 25, 2020, the State of Colorado paid Cabeau $70,000 for the second shipment.

Under the terms of its agreement with Upside, Cabeau was required to pay the first invoice by September 2, 2020, and the

second invoice by September 20, 2020. Cabeau did not pay either invoice.

On September 22, 2020, Sternlight told Upside that Cabeau was "waiting for the money to come in." Three days later, Sternlight claimed Cabeau was still waiting to be paid by the State of Colorado.

Throughout October and November 2020, Sternlight claimed Cabeau "was trying to collect from its other customers" and that the company was also "speaking with a number of investment groups to raise money to pay [Upside]."

In December 2020, Sternlight informed Upside that Cabeau's finances were "in dire straits" and three "secured creditors" had priority liens on Cabeau's assets. Cabeau had spent the previous nine months trying to "secure fresh capital," so it used "the large majority" of the money it received from the State of Colorado to satisfy its payroll. Sternlight acknowledged he made the decision not to pay Upside with the money Cabeau received from the State of Colorado, and he warned Upside that Cabeau would be forced to declare bankruptcy if Upside sued to recover money owed on its invoices.

## 2. Upside's Lawsuit

In November 2020, Upside sued Cabeau for breach of contract (Count 1), goods and services rendered (Count 2), and open book account (Count 3). Upside filed the operative fourth amended complaint in April 2022, which named Cabeau and Sternlight as defendants and, in addition to Counts 1 through 3 (all of which named only Cabeau as defendant), asserted claims for conversion against Cabeau and Sternlight (Count 4), aiding and abetting against Sternlight (Count 5), and promissory fraud against Cabeau and Sternlight (Count 6).

4

Counts 4 through 6 arose out of allegations that Cabeau and Sternlight made false statements concerning Cabeau's financial status to induce Upside into selling Cabeau health masks. Specifically, Upside alleged Cabeau and Sternlight were aware that Cabeau "had no ability to pay" for Upside's masks at the time Cabeau and Sternlight assured Upside that Cabeau could pay for the masks. According to Upside, "neither Cabeau nor Sternlight had any intentions of performing their promises [to pay] at the time they made them." Rather, Cabeau's and Sternlight's "intentions all along were to induce [Upside] to transfer possession of its health masks and deliver them to Cabeau's customer while keeping all of the sales proceeds … for themselves." Upside alleged Cabeau's failure to pay for the masks caused Upside to go out of business.

Sternlight demurred to Counts 4 through 6, and Cabeau demurred to Counts 4 and 6, of the fourth amended complaint.

The court sustained Sternlight's demurrer in its entirety without leave to amend. With respect to Count 4 (conversion), the court found Upside failed to allege Sternlight took any affirmative action, or made any false statements, that caused Upside to ship its health masks to the State of Colorado. Upside also failed to allege that Sternlight interfered with Upside's ability to recover the masks from the State of Colorado. As for Count 6, the court found Upside failed to state a claim for promissory fraud against Sternlight because the company never alleged it communicated with him before agreeing to sell its masks to Cabeau. As for Count 5, the court found Sternlight could not be held liable for aiding and abetting Cabeau in committing an intentional tort because Sternlight was acting in

5

his official capacity as Cabeau's "CEO" when he engaged in all the conduct giving rise to Upside's claims.

The court sustained Cabeau's demurrer to Count 4 without leave to amend and overruled the demurrer as to Count 6. As for Count 4 (conversion), the court explained that Upside did not allege Cabeau ever took possession of Upside's masks, assumed control over the masks, or otherwise applied the masks to its own use. The court found Upside stated a claim for fraud against Cabeau (Count 6), however, because it alleged: (1) Cabeau knowingly made a false statement that it could pay for Upside's masks before Upside agreed to sell its masks to Cabeau and ship them to the State of Colorado; (2) Cabeau never intended to pay for Upside's masks when it made the false statement; (3) Upside would not have agreed to sell its masks to Cabeau had it known Cabeau lacked the ability to pay for them; and (4) Cabeau's false representations caused Upside significant financial damage, including causing the company to go out of business.

On September 1, 2022, the court entered judgment in favor of Sternlight and dismissed all of Upside's claims against him. Upside appeals from that judgment.

## DISCUSSION

### 1. Standard of Review

We independently review an order sustaining a demurrer to determine whether the operative complaint alleges facts sufficient to state a cause of action. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) We assume the truth of all properly pled factual allegations and matters that are judicially noticeable, liberally construing the complaint's allegations with a

6

view toward substantial justice. (*Ibid*.; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7.)

## 2.    Promissory Fraud (Count 6)

In Count 6 of the fourth amended complaint, Upside asserted a cause of action for promissory fraud against Sternlight.

To prevail on a claim for promissory fraud, the plaintiff must prove: (1) before the parties entered the underlying transaction, the defendant made a promise regarding a material fact; (2) at the time the defendant made the promise, he did not intend to perform on it; (3) the defendant intended to deceive or induce the plaintiff to enter into the transaction; (4) the plaintiff reasonably relied on the defendant's promise to enter the transaction; (5) the defendant did not perform on the promise; and (6) the defendant's conduct damaged the plaintiff. (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 540 (*Gruber*).)

A plaintiff must plead every element of the alleged fraud "in full, factually and specifically." (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.) This means the plaintiff must plead "*facts* which show how, when, where, to whom, and by what means the [false] representations were tendered." (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 993 (*Robinson*), internal quotes omitted.)

Upside alleged the following facts in the fourth amended complaint that, if true, would establish a claim for promissory fraud against Sternlight. Before Upside agreed to sell its masks to Cabeau, Sternlight instructed Fan, Cabeau's employee who negotiated the underlying purchase agreement, to assure Upside that Cabeau had the ability to pay for the masks, even though Sternlight was aware that Cabeau was insolvent. (See *Hasso v.*

7

*Hapke* (2014) 227 Cal.App.4th 107, 130 [a defendant may be liable for communicating a fraudulent promise through a third party, if the defendant intends or has reason to expect that the promise be communicated to the plaintiff].) Sternlight intended to induce Upside into selling its masks to Cabeau when he made the false assurance about Cabeau's solvency, and Upside relied on Sternlight's false assurance when it agreed to sell its masks to Cabeau. (See *Gruber, supra,* 48 Cal.App.5th at p. 540.) Sternlight never intended for Cabeau to pay Upside for its masks, and he later contributed to Cabeau's decision not to pay Upside for its masks. And finally, Sternlight's conduct damaged Upside. (See *ibid*.)

That Sternlight may have been acting in his official capacity as Cabeau's chief executive officer when he engaged in the allegedly fraudulent conduct does not insulate him from liability. It is well settled that a defendant's status as a corporate director or officer does not immunize him from personal liability for his own tortious conduct. (*PMC, Inc. v. Kadisha* (2000) 78 Cal.App.4th 1368, 1379.) If a corporate director or officer "participate[s] in the wrong or authorize[s] or direct[s] that it be done[,]" he may be held personally liable for that wrong. (*United States Liability Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 595.)

We also reject Sternlight's argument that Upside's promissory fraud claim is barred because it arises, in part, from Cabeau's breach of its agreement to purchase masks from Upside. As our Supreme Court has explained, tort damages are permitted in cases involving a breach of contract where " 'the contract was fraudulently induced.' " (*Robinson, supra*, 34 Cal.4th at pp. 989–990.) Thus, where, as here, " 'one party commits a fraud during

8

the contract formation or performance, the injured party may recover in contract and tort.'" (*Id*. at p. 990.)[2]

Because Upside stated a claim for promissory fraud against Sternlight, the court should have overruled Sternlight's demurrer to Count 6.

### 3.    Conversion (Count 4)

In Count 4 of the fourth amended complaint, Upside asserted a cause of action for conversion against Sternlight.

To prevail on a claim for conversion, the plaintiff must establish: (1) it owns, or has a right to possess, the property at issue; (2) the defendant committed a wrongful act that interferes with the plaintiff's right to possess the property; and (3) the defendant's conduct damaged the plaintiff. (*Archer v. Coinbase, Inc.* (2020) 53 Cal.App.5th 266, 276.) Conversion is any act of dominion wrongfully asserted over the plaintiff's property that is inconsistent with the plaintiff's rights to that property. (*Enterprise Leasing Corp. v. Shugart Corp.* (1991) 231 Cal.App.3d 737, 747.) " 'It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of

---

[2] Sternlight's related contention that the economic loss rule bars the fraud claim lacks merit. (See *Robinson, supra*, 34 Cal.4th at p. 991 [economic loss rule does not bar plaintiff's fraud and intentional misrepresentation claims because they were independent of defendant's breach of contract].) We also disagree with Sternlight that Upside could not reasonably rely on Fan's statement, at Sternlight's direction, concerning Cabeau's ability to pay. "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." (*Blankenheim v. E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475.) This is not one of those rare cases.

9

control or ownership of the property, or that the alleged converter has applied the property to his own use.' " (*Ibid*.)

Upside claims Sternlight wrongfully dispossessed Upside of its property—the health masks—through false promises that the company could pay for those masks. (See *Elliott v. Federated Fruit and Vegetable Growers* (1930) 108 Cal.App. 412, 417 [obtaining goods by fraud constitutes conversion].) As we explain, Upside failed to state a claim for conversion against Sternlight.

The parties do not dispute that Upside owned the masks giving rise to its conversion claim before it shipped them to the State of Colorado. Additionally, Upside alleged that Sternlight committed a wrongful act that contributed to Upside's decision to relinquish possession of its masks—i.e., his false assurance that Cabeau could pay for the masks. But Upside did not allege that Sternlight assumed control or ownership over Upside's masks or used those masks for his own use. Rather, Upside alleged that, based on Sternlight's and Cabeau's assurances, it decided to sell its masks *to Cabeau* and that it shipped the masks directly to the State of Colorado *at Cabeau's request.* Thus, while Sternlight's conduct may have been a contributing factor to Upside's decision to relinquish possession of its masks, the fourth amended complaint does not allege that Sternlight asserted any control over the masks before or after Upside relinquished possession of them.

In its opening brief, Upside asserts Sternlight improperly used the proceeds that the State of Colorado paid Cabeau for Upside's masks to pay Cabeau's payroll. To the extent Upside argues it stated a claim for conversion of the proceeds Cabeau received from the State of Colorado, that argument lacks merit.

10

Generally, money cannot be the "property" at issue in a conversion claim, unless a " 'specific sum capable of identification is involved.' " (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1151 (*Voris*).) Thus, " 'the simple failure to pay money owed does not constitute conversion.' " (*Ibid*.) Likewise, "a mere contractual right of payment, without more," will not give rise to a conversion claim. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 452.) Rather, the plaintiff must point to some contractual provision that establishes the "plaintiff has a possessory right to certain funds in the defendant's hands." (*Voris*, at p. 1152.)

Upside alleged only that Cabeau agreed to pay for the masks that Upside shipped to the State of Colorado. Upside did not allege that Cabeau or Sternlight agreed to pay Upside with the funds that the State of Colorado paid Cabeau for Upside's masks, nor does the purchase order that Upside attached to its fourth amended complaint reflect such an agreement. And Upside never alleged that its agreement to sell masks to Cabeau established title to, or a lien upon, the proceeds Cabeau received from the State of Colorado. At most, then, Upside alleged it had a contractual right to payment for the masks that Cabeau purchased. But a contractual right to payment is insufficient to establish Upside owned, or had a right to possess, the specific funds that Cabeau received from the State of Colorado for Upside's masks. (*Voris*, *supra*, 7 Cal.5th at pp. 1150–1152.) Consequently, Upside cannot state a claim for conversion arising out of Cabeau's or Sternlight's use of the proceeds that Cabeau received from the State of Colorado.

### 4. Aiding and Abetting (Count 5)

In Count 5 of the fourth amended complaint, Upside asserted a claim for aiding and abetting an intentional tort

against Sternlight. According to Upside, Sternlight aided and abetted Cabeau in converting Upside's masks and in committing promissory fraud.

In California, a defendant may be liable for aiding and abetting the commission of an intentional tort if he: (1) has actual knowledge of the "specific primary wrong" being committed by another person or entity and gives substantial assistance or encouragement to the other person or entity in committing the wrongful act or (2) gives substantial assistance to the other person or entity in accomplishing a tortious result and the defendant's own conduct, separately considered, constitutes a breach of duty to the plaintiff. (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1144–1146.)

Upside asserted a claim for promissory fraud against Cabeau based on identical allegations giving rise to its promissory fraud claim against Sternlight. The court overruled Cabeau's demurrer to Count 6, finding Upside alleged sufficient facts to state a claim for promissory fraud against Cabeau. For the same reasons provided above in our analysis of Upside's promissory fraud claim against Sternlight, we agree that Upside stated a claim for promissory fraud against Cabeau. Thus, we must determine whether Upside alleged sufficient facts to state a claim against Sternlight for aiding and abetting Cabeau's promissory fraud. We conclude that it did.

In Count 5, Upside alleged Sternlight was aware Cabeau fraudulently induced Upside into agreeing to sell its masks to Cabeau. Indeed, Upside alleged Sternlight was one of the key decisionmakers in forming Cabeau's fraudulent scheme. (See *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 507 [a corporate officer or director may be held personally liable

12

for the torts of his company if he " 'participate[s] in the wrong or authorize[s] or direct[s] that it be done' "].) Upside also alleged that Sternlight gave substantial assistance to Cabeau in committing that fraud by, among other things, (1) making false assurances about Cabeau's solvency to convince Upside to sell its masks to Cabeau, and (2) deciding not to pay Upside for the masks after Upside performed its obligations under the purchase agreement.

Because Upside stated a claim against Sternlight for aiding and abetting Cabeau's promissory fraud, the court should have overruled Sternlight's demurrer to Count 5.

5. **Leave to Add a Cause of Action for Fraudulent Concealment**

When a demurrer is sustained without leave to amend, we must determine whether there is a reasonable possibility that the plaintiff can amend its complaint to cure the defect. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) If the defect can be cured, "the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid*.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid*.) Such a showing can be made for the first time on appeal. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)

As a preliminary matter, we note that Upside does not address how it could amend its pleading to cure the defects in Count 4, its claim for conversion against Sternlight. Upside has, therefore, waived any argument that it should be granted leave to amend Count 4 against Sternlight. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned

argument and citations to authority, we treat the point as waived."].)

Upside does, however, request leave to add a seventh cause of action for fraudulent concealment against Cabeau and Sternlight. Upside argues that because it stated a cause of action for promissory fraud against Sternlight and Cabeau, it necessarily can state a cause of action for fraudulent concealment against them. Even assuming Upside's request to add a new cause of action is cognizable on appeal, including against a party not involved in the appeal, it has not met its burden to support its request.

To establish a claim for fraudulent concealment, the plaintiff must prove the defendant had a duty to disclose the concealed facts to the plaintiff. (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 745.) Upside makes no effort to explain what specific facts Cabeau or Sternlight concealed for purposes of a fraudulent concealment claim. Upside also does not explain how it could allege Cabeau or Sternlight owed it a duty to disclose any concealed facts. Because Upside has not explained how it can plead a claim for fraudulent concealment against Sternlight or Cabeau, we deny its request for leave to assert such a claim.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The matter is remanded to the trial court with directions to vacate its order sustaining Sternlight's demurrer to the fourth amended complaint without leave to amend. The court shall enter a new order sustaining the demurrer without leave to amend as to Count 4 and overruling the demurrer as to Counts 5 and 6. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.