[Civ. No. 2872. Second Appellate District, Division Two.—January 29, 1919.]

F. A. KNIGHT, as Administrator, etc., Respondent, v. GEORGE R. BENTEL et al., Appellants.

SALES — ACTION BY PURCHASER TO RECOVER MONEY PAID — FINDING SUPPORTED BY EVIDENCE.—In this action by the purchaser of an automobile to recover money paid on account of the purchase price on the ground that the car delivered was second hand, and not a new one as contracted for, the evidence is held sufficient to support findings for the plaintiff.

ID.—APPEAL — OBJECTIONS TO EVIDENCE.—Objections to evidence on grounds advanced for the first time in the appellate court cannot be considered.

ID.—FRAUD AND DECEIT.—Statements of a representative of the seller held to constitute fraud and deceit.

ID.—CREDIBILITY OF WITNESS — CONFLICTING TESTIMONY.—Where the testimony of a representative of the defendant was evasive and elu-

sive, the trial court was justified in resolving a conflict in favor of the plaintiff.

ID.—FRAUDULENT REPRESENTATIONS AND MATTERS OF OPINION — NON-APPLICABILITY OF GENERAL RULE.—The rule that where parties do not occupy confidential relations to each other, one of them cannot predicate fraud on the statement of the other as to facts equally known to both or upon statements which are merely expressions of opinion, has no application to the case at bar, in which the agent of the defendant falsely represented that the car was a new car, and falsely represented that a new contract which he induced the plaintiff to sign was a similar contract to one previously signed by her.

ID.—INTENT TO DECEIVE — PRESUMPTION.—Under section 1963 of the Code of Civil Procedure the court was not bound by the defendant's testimony that he did not intend to deceive.

ID.—DELIVERY AND ACCEPTANCE OF GOODS—RIGHT TO RESCIND—WAIVER. Where the plaintiff accepted an automobile in the evening relying on defendants' false representation that it was new, and without an opportunity for full examination drove it some distance, but upon the discovery next morning of the fraud returned the car and demanded the return of her money, her right to rescind was not waived.

ID.—INTEREST—FROM WHAT TIME RECOVERABLE.—In this action to rescind a contract and recover money paid under it, nothing was due until rescission or demand for repayment, and interest prior to that time was not allowable.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. C. Millsap for Appellants.

F. A. Knight for Respondent.

THOMAS, J.—This is an action by Ellen Stuart Bentley, who, since the institution of the action, has died, and which action is now being prosecuted by F. A. Knight, who, by proper order heretofore made and entered, has been substituted as plaintiff in place and stead of said Ellen Stuart Bentley, against the defendants herein. From the record in the case it appears that on January 24, 1914, the said Ellen Stuart Bentley signed an agreement with the defendants whereby she agreed to buy from the defendants a Mercer automobile, for the total price of $3,150, payable $850 at the

time of the signing of the contract (payment of which was acknowledged therein), $750 on delivery of the car (which car was to be delivered March 17, 1914), and the balance of the purchase price to be paid in three equal monthly installments. A clause was added to the agreement whereby the defendants were to sell for the plaintiff a Metallurgique car, which the said Ellen Stuart Bentley then owned, as a condition of the contract.

Some time between the signing of the agreement and the thirteenth day of May, 1914, the defendants sold Mrs. Bentley's Metallurgique automobile for $1,250, which they credited on her contract for the Mercer car as of May 14, 1914. The Mercer car was not delivered on March 17th, nor was any car delivered to her by the defendants herein until May 13, 1914. On May 13, 1914, Mrs. Bentley went to the place of business of the defendants, about dusk, was taken for a short ride in the machine to see how it ran, and, without close examination of the car, accepted the same. The car had no seat on the running-board, as provided for in said agreement, and was not of the color called for—"which could be seen at a glance"—but a memorandum was given the said Mrs. Bentley by defendants whereby they, the defendants, agreed that these changes were to be made later. The next morning, upon a closer examination of the car, Mrs. Bentley discovered that it was a second-hand car and had been used and run a great deal. She immediately, on the same day, to wit, May 14, 1914, drove the car back to defendants' place of business, told defendants she refused to accept the car, and demanded the return of her money. Defendants refused to comply with this demand, but told her that they would order a new car. She refused to buy a new car from them, and left the Mercer with the defendants.

Upon making these discoveries, Mrs. Bentley served a notice of rescission of the contract, signed by her, and sued for the return of her money. When the answer of defendants to that suit was filed they set up an entirely different contract as having been executed by the plaintiff on the day the car was delivered to her, to wit, May 13, 1914. She then demanded an inspection of the original of said document, and claims to have then ascertained, for the first time, that when the car was delivered to her she had signed an entirely different document, which was a "lease" of the automobile. She

then remembered the circumstances of having signed the document, and claims that her signature thereto was obtained by a fraud and a trick of the defendants. Mrs. Bentley then dismissed her first suit and served a new notice of rescission of the first agreement and the second document just referred to, and filed her complaint in this action. It is in four counts: The first for money had and received; the second based on failure of consideration; the third based upon partial failure of consideration, and the fourth for the recovery of the money and the revocation of the lease, upon the ground that her signature to the lease was obtained by fraud and trick perpetrated by the defendants. No copy of either of said instruments was given by defendants to plaintiff. Judgment was given for the plaintiff for the recovery of her money, and defendants have appealed to this court for a reversal of that judgment.

It was stipulated at the trial that the defendants had been paid by the said Mrs. Bentley the sum of two thousand six hundred dollars, on the following dates: October 27, 1913, one hundred dollars; January 24, 1914, $750; May 14, 1914 (proceeds from the sale of the Metallurgique car), $1,250, and May 14, 1914, five hundred dollars.

Defendants challenge the sufficiency of the evidence to support the findings of the trial court. We are satisfied from a careful examination of the record in this case that the evidence abundantly supports the findings of the court. The witness Ruddle is the representative of the defendants with whom Mrs. Bentley had almost all of her business dealings in connection with the purchase, etc., of the car in question. There is no dispute as to the fact that the contract, Plaintiff's Exhibit No. 1, was signed by Mrs. Bentley on January 24, 1914, and that by the terms of that agreement the said Mercer car was to be delivered on or about March 17th of the same year. This was not done. But when Mrs. Bentley heard, some time in May, 1914, that the car had arrived, she went to the place of business of the defendants, which, according to the record, was on May 13, 1914, and about noon of that day. At that time she was told that the car was not ready for delivery; that they were putting on some wire wheels, etc., and agreed to have it ready for delivery at about 4 o'clock that afternoon. It was not ready for delivery, however, until about 5:30 or 6 o'clock. After looking the car over from the

outside, without making anything that might be considered an
"examination" of it, she was taken out, as has already been
set forth herein, for a short ride. She then paid five hun-
dred dollars in cash and took the car with her to Long Beach
that night. Before this took place, however, there was some
talk about payments, and the witness Ruddle said he would
arrange it to suit her, and, as she understood it, and as shown
by the evidence, the contract of January 24th was modified
only as to the amounts of payments and the time when the
balance due on the car should be paid. Mrs. Bentley says
that Mr. Ruddle said to her, "Mrs. Bentley, here is a similar
contract to the one which you signed previously, only it will
make the payments easier for you, and according to your re-
quest." Mrs. Bentley further says that she looked over and
read that portion of the same as to payments and accepted
Mr. Ruddle's word that it was a "similar contract," and, in
answer to a question from the court as to whether she relied
on anything else besides that, answered that she did not. In
view of the record here, we feel that the attorney for Mrs.
Bentley in this case, when writing to defendants under date
of May 15, 1914, was correct when he said that their
"methods of dealing with Mrs. Bentley in this matter have
been so outrageously unbusinesslike and unfair."

There is no conflict in the evidence that Mrs. Bentley was
buying a new car, nor is there any conflict in the evidence
that the defendants represented to her that they were selling
her a new car, and that the car delivered to her on May 13,
1914, was such a car. We are of the opinion that it will not
be seriously contended by defendants and appellants here that
a car with the "enamel on self-starting lever worn off; dent
in bottom of radiator, cut by shock absorber; front of dash
dented in, and paint on same knocked off from raising and
lowering hood; molding around top of doors and dash
showed weatherworn; paint and varnish off the same; right
front fender had been bent clear across; where back fender
was attached to running board was split, and showed it was
an old break—rusted, and had appearance of having been
done some time; tool-box lid dented up from inside by loose
objects carried in the same; water manifold on motor rust-
eaten, indicating age; magneto shaft on motor pitted by rust;
front axle showed signs of having been heated to straighten;
one of the steering knuckles showed signs of having been

heated and straightened; there was about a one-sixteenth inch play in the front spindle; hub cap had been dented in and straightened out; spark and gasoline control levers above steering-wheel were battered up, showing they had been removed from car; very rotten job of painting—black paint spattered on car from striping; stripes did not lap each other; varnish on car was so green it would leave the imprint of hands where touched; radiator was loose on car," can be properly designated *a new car*. The quoted portion of the foregoing statement is taken *verbatim* from the evidence in the record, and it stands without contradiction.

It also appears in the record, without conflict, from the testimony of the witness Tisdale, that he, Tisdale, found Mr. Bentel, one of the defendants, "in his office, and asked him when the car would be ready for delivery, and he said, 'I would like to have a day or two longer on the car,' and said there were several things he wanted to have fixed about the car before he delivered it; and asked me if I thought Mrs. Bentley would be willing to let him have this extra time, and I told him I did not think she would. Then he said he would have the work rushed through, and that Mrs. Bentley could have the car at 4 o'clock P. M. the same day, and that any time she brought the car back they would equip it according to specifications; the mechanics at that time were putting wire wheels on the car, and the wheel racks for the spare rims." It is obvious, therefore, that not only was it known to Ruddle, the representative of defendants, but that also one of the partners himself knew the condition of the car to be as already hereinbefore set forth.

It also appears from the evidence that the next day, after discovering said defects in the car, Mrs. Bentley, together with her chauffeur, Tisdale, took the car back to defendants and left it with them. From the record the following significant facts appear: "Mr. Ruddle and Mrs. Bentley and myself, after we got to Los Angeles, went over to see Mr. Bentel, and there the following conversation took place: Mrs. Bentley told Mr. Bentel that there was the car; and he asked her what the trouble was, and she proceeded to show him the defects of said car. Mr. Bentel said that these were due to the severe test that the factory had put the car to; and Mrs. Bentley said she did not think a reputable company like the Mercer Company would allow such defects to get by their in-

spectors; and also told him the car showed signs of being used pretty hard, and that she refused to accept the car under any conditions whatever. Then Mr. Bentel offered to wire the factory for a new car, and for one that would come up to the specifications. Mrs. Bentley refused this offer, saying, 'You have been dishonest with me about this car, and I am not going to give you a chance to be with another.' She asked Mr. Bentel to refund her money she had paid on the car; Mr. Bentel refused to refund the money, but told her that he would put the car in the show window and try to sell it for her, and if he could he would return the two thousand six hundred dollars. Mrs. Bentley told him it was defendants' car, and that they had not lived up to their contract, and that she did not want anything more to do with it, excepting to get her money she had paid on it. Mrs. Bentley told Mr. Bentel that she would give him ten days to refund the money, and if he did not do so she would have to enter a suit against him for it.''

We might say in passing that said statement made by Mr. Bentel (the quotation just made) remains in the record without contradiction. The statement that the defects above set forth were ''due to the severe test that the factory had put the car to'' in our opinion is hardly worthy of serious consideration. Had there been any conflict in the evidence, the statement being so unreasonable, the court would have been, we think, justified in disregarding it entirely.

As to alleged errors of law occurring on the trial, we content ourselves with the general statement that, assuming, for the present purpose, without so holding, all of the specifications of error to be well taken, on the face of the record they show that the defendants were not prejudiced thereby. Whatever point might have been made at the time was cured by evidence furnished on cross-examination. (*Hill* v. *McCoy,* 1 Cal. App. 159, [81 Pac. 1015] ; *Kellam* v. *Brode,* 1 Cal. App. 315, [82 Pac. 213] ; *Bergtholdt* v. *Porter,* 114 Cal. 681, [46 Pac. 738].) The point that rulings of the court, to which exceptions 2, 3, and 4 were reserved, were error, because the questions called for mere conclusions of the witness, and not for a statement of fact, is not well taken, because this objection was not advanced in the trial court and appears in this court for the first time. (*Watrous* v. *Cunningham,* 71 Cal. 30, [11

Pac. 811]; *People* v. *McCauley,* 45 Cal. 146; *People* v. *Bishop,* 134 Cal. 682, [66 Pac. 976].)

The witness Ruddle knew about the contract of January 24, 1914; also of the so-called lease dated May 12, 1914, and of the memorandum given to Mrs. Bentley. If, therefore, the making of the statement that Plaintiff's Exhibit No. 2 was "similar to the contract" theretofore, and on January 24, 1914, made, except as to the matter of payments, the delivery of the car with the defects already referred to, and telling Mrs. Bentley that it was a new car—and many other statements and acts not necessary to refer to further—do not constitute fraud and deceit, then we are unable to know what kind of case it would be necessary to present in order to establish that fact.

The defendants' case relied almost entirely upon the testimony of the witness Ruddle. Where there was any conflict between his testimony and that of plaintiff's, upon any material point, we are of the opinion, from an examination of the record in this case, that the court was justified in resolving the conflict in favor of the plaintiff. The testimony of the witness Ruddle was very unsatisfactory. It was evasive and elusive and does not have the earmarks of the genuine ring about it. (Code Civ. Proc., secs. 1847, 2061.)

There is no doubt at all that, as appellant argues, "where the parties to a contract for the sale of personal property do not occupy confidential relations to each other, one of them cannot predicate fraud on the statement of the other as to the law applicable to facts equally well known to both of them, nor upon statements which are but expressions of opinion." The cases cited by appellants support that contention. But these do not apply to the case at bar. It can hardly be said that the statement that the car here referred to was a new car is one of opinion, or that Plaintiff's Exhibit No. 2 was a "similar contract" to the one signed January 24, 1914, excepting as to payments—particularly in view of the testimony of Ruddle in that respect. In the first case cited—*Rheingans* v. *Smith,* 161 Cal. 362, [Ann. Cas. 1913B, 1140, 119 Pac. 494], —the court says: "Rheingans, therefore, had no inducement, or right, to rely on statements of Smith, *except as to facts of which Rheingans was ignorant,* and which he had reason to believe Smith knew, and except, possibly, as to the law based on facts of which he had reason to believe Smith's knowledge

was greater than his own.'' This applies with great force to the facts in the case at bar.

The appellants contend that there was no intention on the part of defendants to deceive. If the court is bound by the defendant's testimony that he "did not intend to deceive," then the cases cited would apply. But under the facts in this case we think they are not in point. (Code Civ. Proc., sec. 1963.) Here the actions of the defendants speak so much louder than what they said to Mrs. Bentley, that equity will not listen to their present contention.

Appellants contend that there was no claim made in the pleadings, and no evidence offered on the trial, that Plaintiff's Exhibit No. 1 was induced by fraud; and further, that even though the court found that Exhibit No. 2 was obtained from Mrs. Bentley by fraud of defendants, and the cancellation and rescission of the same actually had, that this did not authorize the court in granting judgment for plaintiff. Appellants urge, in support of this claim: (1) That Mrs. Bentley examined the car; (2) That defendants in no way prevented her from making as full and complete an examination of the car as she desired; (3) That after examining same she found that the car did not comply with the contract; and (4) That after such examination, and with full knowledge of non-compliance with the contract, she accepted and used the car. There is no merit in this contention. The answer to it is that she took the car to Long Beach relying upon what the defendants said and agreed to do, as set forth in Plaintiff's Exhibit No. 3. At that time no examination, which can rightfully be called such, had been made. The next morning, which was the first opportunity Mrs. Bentley had to make an examination, an examination was made, and the result was the discovery that defendants had perpetrated a colossal fraud upon her, viz., that the consideration had failed—partially, if not altogether; and she did, immediately upon such discovery, what any sensible person would do under the circumstances —returned the car and demanded the return of her money. (Civ. Code, sec. 1689; *Marriner* v. *Dennison,* 78 Cal. 202, [20 Pac. 386].) No further authorities are considered necessary to support our contention here.

It is further urged by appellants that Mrs. Bentley had waived her right to rescission by using the car after ascertaining that it failed to meet the requirements of the contract.

That is a correct statement of the law, but it does not apply here. There is nothing to the point. The car was returned immediately—the same day that the discovery was made. This satisfies the statute. As to rescission, the record here shows that the requirements of the sections of the Civil Code have been fully complied with. (Civ. Code, secs. 3406, 1691; *United Motor Co.* v. *Callander,* 30 Cal. App. 41, [157 Pac. 561].)

Appellants contend that the allowance by the court to plaintiff of interest on payments made by Mrs. Bentley from the date upon which said payments were made is error. This point is well taken. (*Hayt* v. *Bentel,* 164 Cal. 680, [130 Pac. 432].) The law awards interest on money only from the time it falls due, unless otherwise specifically provided for. (Civ. Code, sec. 1917.) "Until rescission, or demand for repayment, nothing was due, and interest was not allowable." (*Hellman* v. *Merz,* 112 Cal. 661, [44 Pac. 1079].) The record here discloses the fact that notice of rescission was given May 14, 1914. It follows, therefore, that any interest allowed for any period on any portion of the money paid before that time was not legally a permissible charge.

We believe that the record in this case justifies us in holding that had the trial court arrived at any other judgment than one in favor of the plaintiff, as herein stated, it would have presented one of those inexcusable miscarriages of justice which tend to bring courts into disrepute, and to shake men's faith in the administration of the law. In our opinion, with the single exception noted, the findings are fully supported by the evidence; and there are no other errors of law appearing in the record needing our consideration.

The cause is remanded, with direction to the trial court to modify the judgment by deducting from the amount recovered all sums shown by the findings to have been allowed as interest for any period prior to the fourteenth day of May, 1914, the date of notice of rescission; and as so modified, the judgment shall stand affirmed.

It is so ordered.

Finlayson, P. J., and Sloane, J., concurred.