[Civ. No. 3160.   First Appellate District, Division One.—December 31, 1919.]

EMOGENE A. CRAIG, Executrix, etc., Respondent, v. R. P. SHEA, Appellant.

[1] FALSE REPRESENTATIONS—MATERIALITY—RELIANCE UPON.—In order to recover for false representations, the misrepresentation need not be the sole cause of the contract, but it must be of such a nature, weight, and force that the court can say without it the contract would not have been made.

[2] ID.—REPRESENTATIONS AS TO AGES OF TREES—RELIANCE UPON—EVIDENCE—FINDING.—In this action for damages for false representations as to the ages of certain walnut trees made by defendant's agent upon the sale to plaintiff of defendant's walnut grove, the evidence as to the investigations and inquiries made by plaintiff at the time he was shown the grove and the statements made by the agent at other times prior to plaintiff's offer to purchase would not warrant the finding of the trial court "that he was induced to purchase the property because he relied upon the statements as to the ages of the trees."

APPEAL from a judgment of the Superior Court of Los Angeles County.   L. T. Price, Judge.   Reversed.

The facts are stated in the opinion of the court.

Mulford & Dryer for Appellant.

Hugo D. Newhouse for Respondent.

WOOD, J., *pro tem.*—This is an appeal from a judgment awarding $3,750 damages for false representations made by the agent of defendant upon the sale of a thirty-acre walnut grove.   Mr. Craig died after the entry of judgment,

and the executrix of his will has been substituted as plaintiff.

There is no dispute as to the representations made by the agent of defendant. It is alleged in the complaint, and the plaintiff testified at the trial, that he purchased the property believing and relying upon such representations, which were "That fifteen acres of the grove was planted to trees of the age of twelve years, and the remaining fifteen acres to trees of the age of eighteen years; that the gross income of the orchard would be from twelve to eighteen per cent upon thirty thousand dollars." Prior to coming to California Mr. Craig had been for many years the assistant controller of the United States Steel Corporation. His business did not bring him in contact with outside people, and while he had made some investments in real estate he had always acted through the advice of an attorney. He arrived in Los Angeles from New York City in April, 1914. At that time he was sixty-two years of age, in poor health, suffering from rheumatism, accompanied with severe pains in his legs, and was unable to walk more than a few feet at a time. Previously he had written to his daughter-in-law in Los Angeles to see if she could find a walnut grove for him. She had communicated his wishes to Neil Durflinger, who was employed under some form of contract, sharing commissions, in the office of Mr. Mesick, a real estate agent. Within two or three days after his arrival in Los Angeles City he, his wife, and his daughter-in-law were taken in an automobile by Mr. Mesick and Mr. Durflinger to see the grove in question, which is located about thirteen miles from the city. On the way Mr. Mesick told plaintiff that he was going to show him one of the prettiest ranches in Southern California. He also made the statements as to the ages of the trees, and some time during the day the one as to income. The party remained at the grove about fifteen or twenty minutes. The plaintiff walked out and examined two of the trees, and drove about the place. He was charmed with its appearance. In his language, "It was certainly a pretty looking ranch, and it is to-day. I had never seen a walnut ranch bearing, and we stood around in amazement looking at those trees. They were very large and fine looking, in blossom, with the leaves just budding out, and there was a nice fence in front with roses

at every post.'' The same evening, in response to his invitation, Mr. Mesick called upon Mr. Craig, at which time the latter requested the agent to submit an offer of twenty-five thousand dollars to Mr. Shea, and at Mr. Mesick's suggestion he gave him his check for one thousand dollars as an evidence of good faith. His offer was accepted the following day and the transaction thereafter closed. Mr. Mesick received a commission from the defendant upon the sale, but had no previous authorization from Mr. Shea to sell the property. The latter had purchased it in 1913, expecting to make it his home. Some three months before the sale to plaintiff he changed his mind, and spoke to Mr. Mesick, with whom he had been on ''intimate friendly terms for years,'' about finding a purchaser for thirty thousand dollars. He told Mr. Mesick that the trees were twelve and eighteen years old. He made no statement of any kind in reference to income from the property, and he testified at the trial that he obtained his information as to the age of the trees from the former owner of the property. Mr. Shea and Mr. Craig never met until some time after the sale was consummated.

The trial court found that the trees were of the age of twenty-eight and forty-two years respectively, instead of twelve and eighteen years, as represented, and that the property would have been worth $3,750 more than its actual value if the trees had been of the ages as represented.

Plaintiff produced four witnesses of experience in walnut-growing who testified that hard-shell nut trees of the age of forty-two years produce no income, and they variously estimated that the fifteen-acre tract would have been of a value of from two hundred to five hundred dollars greater with walnuts of the age of eighteen years. On the other hand, there were eight witnesses for the defendant, of many years' experience in the walnut industry, five of whom were appraisers for banks making loans upon property in the locality. They testified that the age of trees will not diminish the production or lessen the value of this land with its deep, rich alluvial soil. As trees grow larger the limbs interlace and overlap, so that it then becomes necessary to remove some of the trees to let in the sunlight and air, which increases the production per tree to the extent that it does not lessen the output from an acre.

In confirmation of this theory it appears that in 1911 there was an injurious and drastic pruning of the orchard by one of the witnesses, who testified that a hard-shell tree had no value after it reached the age of, forty years. At that time one of the defendant's witnesses expostulated with the wielder of the pruning implements, and told him that it would take five years for the trees to recover. This pruning is characterized by counsel for both appellant and respondent as no less a crime than that of "murder." It was also shown that the year 1914 was a poor year for hard-shell nuts all over the county.

The value of the crop of the entire orchard for each of the years 1913 and 1914 was less than two-thirds of the amount that plaintiff's witnesses estimated it should be from fifteen acres of soft-shell trees, such as composed the younger grove. Mr. Gooch, who for nearly twenty-five years up to 1912 was president of the Walnut Growers' Association, and who handled and inspected the nuts that came from this property during all that time, testified, without contradiction, that it always produced good average crops.

Having shown that there is a difference of opinion among walnut growers themselves as to the materiality of the statements as to the age of the trees, we approach the vital question as to whether the evidence shows that the plaintiff was in fact influenced by such statements or considered them to be material.

The court did not find that the plaintiff placed any reliance upon the representation as to income, but it did find "that he was induced to purchase the property because he relied upon the statements as to the ages of the trees."

"By express provision of the Civil Code, consent to a contract is deemed to have been obtained through fraud 'only when it would not have been given had such cause not existed.' (Sec. 1568.)" (Elliott v. Southern Pacific Co., ·145 Cal. 441, 448, [68 L. R. A. 393, 79 Pac. 420, 423].)

[1] In order for plaintiff to recover, the misrepresentation "need not be the sole cause of the contract, but it must be of such nature, weight, and force that the court can say 'without it the contract would not have been made.'" (Colton v. Stanford, 82 Cal. 399, [16 Am. St. Rep. 137, 23 Pac. 28].) (See, also, Oppenheimer v. Clunie,

142 Cal. 319, [75 Pac. 899], and *Maxon-Nowlin Co.* v. *Norswing,* 166 Cal. 509, [137 Pac. 240].)

[2]  The only evidence to support the finding is the following testimony of plaintiff:

''Question: What statements were made to you as to the physical condition of the property by either Mr. Mesick or Mr. Durflinger? Answer: It is my recollection that Mr. Mesick stated to me that it was one of the prettiest ranches in Southern California he was going to show me, and the trees on it were eighteen and twelve years old. They told me they were walnut trees. During the same day he stated to me that the revenue would be from twelve to eighteen per cent on the price asked, which was thirty thousand dollars. . . . Other than my visit to the ranch and the conversation with Mr. Mesick and Mr. Durflinger I did not make any other independent investigation of the prop. erty. I purchased this property relying upon the statements of Mr. Durflinger and Mr. Mesick.''

The plaintiff further testified that he did not examine the soil. He thought that his attention was called to it as not being gritty or having any sand in it; that he did not ask about the age of the trees; that he knew nothing about walnut trees, whether they were good at fifteen years or forty years, whether one at forty was as good as one at twenty years, and nothing of the relation of the age to income qualities. He was dissatisfied, as far as the revenue was concerned, after he harvested the crop about the last of October or the early part of November. He distinctly remembered that somebody had said prior to Christmas that the trees were older than eighteen and twelve years; that they were too large for the reported age. After hearing these rumors he did not commence to investigate. He really did not believe it so. He did not remember if he said in the latter part of the year that he would commence action against Mr. Shea for damages. He might have done so. If he did, it would have been on the ground of revenue then. About the 20th of January or 1st of February following he made a payment of $4,375 on account of the purchase price. Either before or after Christmas the neighbors told him the trees were twenty-five years old, some said thirty years. He had no idea for a long time and did not know that it was because of the age of the trees that

the ranch would produce no revenue. About March 11 (1915) he went to see Mrs. McLean, a former owner of the property, to get confirmation as to whether or not these trees were older, and she denied that she had made a statement about the age of the trees to Shea. Plaintiff could not tell just when he became convinced that he had been "buncoed" out of the revenue because of the age of the trees. While he made no inquiry as to the age of the trees, yet it appears that he did ask the agent what return he would get on his investment.

Considering this evidence with the view of upholding the finding of the trial court, is there a reasonable inference that plaintiff would not have made the contract but for the statements as to the ages of the trees? The plaintiff did not so state. All the inferences seem against it. If the agent or any other person had stated that the income diminished after the age of forty years, or at any other age, an inference might be drawn that the plaintiff relied upon the false statements of the agent. His own testimony shows that he never had the slightest interest in those statements, even after he heard they were false, until someone told him it was the age of the trees that caused his lack of income. Under the circumstances disclosed by the evidence it is unreasonable to suppose that a man who regarded the character of the soil with such utter indifference, who was lost in admiration of the trees and the beauty of the place, and who had no information or opinion about the relation of age to income, did regard as of any consequence these statements as to age. He saw the trees in health, in blossom and in bud. That signified fruit, irrespective of age, unless other causes intervened. He inquired about income, but not about the ages of the trees, or any other causes that might affect the income. The conclusion seems inevitable that Mr. Craig did not rely upon the statements as to ages of the trees, and that he never attached any importance to these statements at the time of the purchase, or after he learned that he had been deceived in the ages of the trees, until the relation of age to income was suggested. Then, and not until then, did he become interested.

The evidence does not meet the requirements of the authorities cited.

It is proper for us to say that we understand that, in the event of another trial, the question of the effect of the false statements as to income will not arise, without evidence indicating that the owner authorized such statements, as it seems to be conceded that the case of *Samson* v. *Beale,* 27 Wash. 557, [68 Pac. 180], contains a correct exposition of the law to the extent that it holds that false representations made by the agent, not authorized by the owner, will release the purchaser from his contract, but will not bind the owner in damages.

Plaintiff should be permitted to amend the complaint. It is unnecessary to lengthen the opinion by pointing out the defects, for they were discovered by counsel at the time of drawing his proposed findings. The judgment is reversed.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1920, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal of the first appellate district, division one, is denied altogether without reference to the matter contained in the next to the last paragraph of the opinion dealing with the liability of an owner on account of unauthorized false representations on the part of the agent. This portion of the opinion is not essential to the decision and we express no opinion in regard thereto.

All the Justices concurred.