[Civ. No. 1713.   Fourth Appellate District.—August 14, 1935.]

JIM SHIRREFFS et al., Respondents, v. ALTA CANYADA CORPORATION (a Corporation), Appellant.

744

Pease & Dolley and Adolph H. Levy for Appellant.

William P. Mealey for Respondents.

JENNINGS, J.—Plaintiffs instituted this action for the purpose of rescinding a contract which they had made with the defendant, Alta Canyada Corporation, whereby they agreed to purchase from said corporation a parcel of land in Los Angeles County. In addition plaintiffs sought to recover the amount paid by them under the contract together with interest thereon. From a judgment in favor of plaintiffs decreeing rescission of the contract and permitting recovery of the purchase price with interest, the defendant Alta Canyada Corporation has appealed.

The ground upon which rescission was granted was that prior to the execution of the above-mentioned contract the president of the corporation had falsely represented to plaintiffs that the corporation had reserved and set aside for park purposes for the use of purchasers of lots a tract of land containing 100 acres in the Alta Canyada canyon. The undisputed evidence showed that the corporation was the owner of the entire canyon, which contained approximately 400 acres of land none of which at any time material to this proceeding had been subdivided or offered for sale. The evidence also showed that the corporation owned a tract of land adjacent to the canyon which had been subdivided into lots that were being offered for sale by the corporation. At the time plaintiffs entered into the contract for the purchase of one of these lots, a number had been sold, some of which had been improved by the erection thereon of houses.

Before entering upon a consideration of the various contentions advanced on this appeal certain concessions of the appellant may properly be noted. It is conceded that certain literature printed and distributed by the appellant in its selling campaign contained a statement that a hundred acres in the canyon "*had* been reserved and set aside" (italics ours) as a park and picnic ground for the use of purchasers of lots, their families and friends. In connection with this concession it should be mentioned that respondents testified that they had received and read this literature prior to the time they made the contract for the purchase of the lot. This evidence is undisputed. It is also conceded that the evidence of respondents showed that prior to the time respondents entered into the contract, the president of appellant went into the canyon with respondents and, standing on a knoll, swept his arm and pointed, saying as he did so, "This is the hundred acres." The obvious effect of this concession is that it must here be assumed that prior to the time the contract for the purchase of the land was made, it was orally represented to respondents that a hundred acres of land in the Alta Canyada canyon had been reserved and set aside by appellant for park purposes for the use of lot owners, their families and friends. It is further conceded that the trial court's finding that it was represented that a specific hundred acres of land in the lower end of the canyon had been reserved and set aside is not

lacking in evidentiary support and may not therefore be successfully attacked on this appeal.

Appellant advances the following contentions: (1) Respondents did not place any reliance on the aforesaid representation and would have purchased the lot although such representation had not in fact been made. (2) The representation was not material. (3) The representation was so vague, indefinite and incomplete that respondents were not justified in relying upon it. (4) The one hundred acres was actually reserved and set aside for park purposes by appellant. (5) Respondents waived any alleged misrepresentation by making payments in accordance with the provisions of the contract after they had knowledge of the fraud. (6) The remedy of rescission granted by the trial court is not justified in this case for the reason that the parties cannot be placed substantially in the respective positions which they occupied prior to execution of the contract. (7) Respondents are guilty of laches and the action is barred by the statute of limitations.

■ With respect to the contention that respondents did not sustain the burden placed upon them of establishing the necessary factor of reliance on the representation, it is urged that the only evidence which was produced in proof of reliance consisted of the bald testimony of the respondents that they believed the representation and relied upon it in making the contract of purchase. This evidence is criticized as being a purely stereotyped statement relative to a state of mind. In opposition thereto it is pointed out that the evidence showed that respondents made no investigation for a period of more than four years for the purpose of discovering whether the representation was true or false; that the representation was not included in the written contract to which they affixed their signatures; that no mention of it was made in the deed which they received from appellant more than two years after the original contract was executed; that the representation was not mentioned in the deed of trust which respondents gave to secure the balance of the purchase price; that no mention of the representation was made in certain letters sent by respondent Jim Shirreffs to appellant wherein the aforesaid respondent sought to have appellant take back the lot and return to him the amount which he had paid under his contract.

It is obvious that this contention simply amounts to an attack on the trial court's finding that respondents relied on the representation on the familiar ground of evidentiary non-support. The usual rule is therefore applicable and the finding may not be disturbed if the record contains any evidence to support it. Appellant concedes that the testimony of respondents was that they did believe and rely on the representation. This evidence may not be disregarded. The question was one of fact for the trier of facts. The reviewer of the cold record may entertain an opinion that the evidence would have supported a contrary finding. He is not, however, warranted in substituting this opinion in place of a finding made by the trial court from the testimony of witnesses whose conduct and demeanor it was privileged to observe and to weigh. The element of reliance in cases of this character necessarily relates to a state of mind. The task of discovery is difficult for the trial court. It would be more difficult for an appellate court. It is our conclusion that the finding of reliance is not so lacking in evidentiary support that we are justified in overturning it.

■ There is some suggestion by appellant that the trial court erroneously failed to appreciate the effect of certain undisputed evidence which bore on the question of whether or not respondents placed reliance on the representation regarding the reservation of land for park purposes. This evidence consisted of three different letters addressed by respondent Jim Shirreffs to appellant on the dates of July 25, 1930, July 31, 1930, and February 22, 1932. In each of these letters the writer expressed a desire that appellant take back the property and repay him therefor the money which he had invested in it or a portion thereof. In none of the letters is to be found any mention of the representation which was later made the basis for the present action. It is conceded that the motive which prompted respondents to institute the present action may not be investigated but it is argued nevertheless that this evidence effectually contradicted the obviously self-serving and tardy testimony of respondents that they relied on the representation and that the trial court therefore erred in finding that they did place reliance in the representation in the face of this evidence.

This argument is useless. Appellant's concession that the motive which animated respondents in commencing the action

for rescission may not be inquired into is a proper concession and one that is amply sustained by the authorities. (*Crim* v. *Umbsen,* 155 Cal. 697, 702 [103 Pac. 178, 132 Am. St. Rep. 127] ; *Conlin* v. *Osborn,* 161 Cal. 659, 668 [120 Pac. 755] ; *De Bairos* v. *Barlin,* 46 Cal. App. 665, 672 [190 Pac. 188].) The trial court was therefore at liberty to disregard entirely the last-mentioned evidence. In any event, the most that may be said for it is that it created a conflict in the evidence respecting the feature of reliance which was resolved in favor of respondents and which under the familiar rule governing a reviewing court may not now be disturbed.

■ Appellant's contention that the representation was not material is likewise unconvincing. The test of materiality is that the contract sought to be rescinded would not have been made if the representation had been absent. (*Colton* v. *Stanford,* 82 Cal. 351, 399 [23 Pac. 16, 16 Am. St. Rep. 137] ; *Craig* v. *Shea,* 45 Cal. App. 351, 354 [188 Pac. 73].) Here again is a question of fact which was presented for the determination of the trial·court. The court found that respondents believed the statements made by appellant's president relative to the reservation of land for park purposes and relied thereon. Examination of the record indicates the presence of evidence supporting the finding. It may not therefore be disturbed. It may be remarked in passing that the contention of immateriality comes with poor grace from a seller who admits that it included the representation in a printed prospectus which was prepared and distributed in a deliberate effort to interest prospective purchasers and to induce the very action which respondents took, viz., the purchase of a lot.

■ Appellant's objection that the misrepresentation which constituted the basis for the trial court's action in decreeing rescission and recovery of the amount paid under the contract was so vague, indefinite, and uncertain that respondents were not justified in relying upon it is likewise lacking in merit. As hereinabove noted, appellant concedes that the trial court's finding that it was represented that a specific hundred acres of land in the lower end of the canyon had been reserved is not lacking in evidentiary support. This concession, which in our opinion was proper, renders the objection of vagueness and uncertainty entirely ineffective. Since the court found that the representation was that a specific hundred acres in a definite location had been reserved and it

is conceded that the finding to this effect has evidentiary support, it may not be successfully argued that the representation was vague and indefinite. The location of the acreage which it was declared had been reserved was definitely placed. The quantity of land reserved was specifically stated. The finding is further restricted in that it states that the representation was that a specific hundred acres had been reserved. We do not understand that it is now contended that the reserved land should have been described by metes and bounds. It is our opinion that the objection here considered is entirely without merit in the face of the above-mentioned concession.

Appellant challenges the trial court's finding that the representation regarding a reservation of specific acreage for park purposes was not true by its contention that the evidence showed that a reservation of one hundred acres of land in the canyon for park purposes was actually made. In this connection, it is pointed out that the evidence produced by appellant showed that appellant was a close corporation, the sole purpose of whose existence was the subdivision and development of the land which it owned and all of whose stock was owned by four or five persons, that by reason thereof any corporate action which was taken by appellant was not attended with the formality which characterizes similar action by large corporations whose stock is owned by the public, that the directors of appellant usually held but one annual meeting and that the board often failed to act formally on many important matters. It is further urged that the undisputed evidence showed that none of appellant's canyon land was sold after the date on which the contract between appellant and respondents was executed and that the entire canyon acreage was intact at the date of trial, hence there was no occasion for any formal reservation of land for the use of lot purchasers for park purposes, that the subject of the canyon park was discussed on numerous occasions by appellant's officers and directors and it was clearly understood and agreed among the directors and officers that not all of the canyon acreage would ever be sold but that one hundred acres thereof must and would be reserved from sale and set aside for park purposes. The argument concludes with the definitions of the terms "set aside" and "reserve" as given in Webster's New International Dictionary and in Ballantine's Law Dictionary. From these definitions it is made to appear that the two terms

are practically synonymous and that the generally accepted meaning of both of them is to keep back, to withhold. It is then declared that the failure of appellant to subdivide or to sell any land in the canyon and more particularly the clear understanding among all of its officers and directors that one hundred acres in the canyon would never be sold but would be withheld and retained for park purposes constituted a sufficient compliance with the representation that a hundred acres had been reserved to remove from the representation the stigma of falsity placed upon it by the trial court.

The argument thus presented is ingenious but lacks conviction. In the final analysis, it simply amounts to a contention that a representation that a certain acreage had been reserved is fully satisfied by a showing that those individuals who were empowered to act for the corporation had agreed among themselves that at some future time a legal reservation of a hundred acres in the canyon for park purposes should be made and that if the canyon acreage were sold some unidentified and indefinite hundred acres should be withheld from sale and retained for the specified purpose. It is our opinion that the representation that a hundred acres in the canyon had been reserved and set aside for park purposes was not fulfilled by the declared mental reservation of appellant's directors and that respondents were warranted in believing that some appropriate corporate action had been taken to insure to the lot owners the actual legal reservation of a specific hundred acres in the canyon. Furthermore, appellant's argument in this regard is not consistent with its concession that the court's finding that it was represented that a specific one hundred acres in a definite location had been reserved may not successfully be attacked for evidentiary insufficiency. If the representation was as the court found it to be it was not fulfilled by a showing that appellant's officers and directors did no more than discuss the matter and agree among themselves that some unidentified hundred acres would at some future time be set aside at some indefinite location in the canyon. Finally, the weakness of appellant's position in this regard is strikingly indicated by the letter of appellant's president addressed to ''Property Owners'' under date of July 14, 1932. It is there declared that it had been stated in literature and through salesmen of the corporation that a portion of the canyon ''would be reserved for property owners'' and that

this was qualified by a statement that it was expected that an association of property owners would be formed "which would maintain the parkways in the tract proper and the canyon". The letter then went on to declare that at various times the corporation had attempted to form such an association but that the mere mention of assessments without which the association could not function was sufficient to defeat the proposal, that consequently the corporation itself had undertaken to pay the expenses of caring for parkways and canyon with very slight assistance from the property owners, that the canyon upkeep had proved to be an enormous burden to the corporation and since the property owners had failed to form an association to maintain it, "it was never dedicated" and no easement or license was created "either through usage or deed". The letter concluded with an expression of willingness "to convey to an association of property owners, who will assess themselves to *properly maintain* and police it, a section of the canyon, where there will be no chance of contamination of the water supply". In this communication it is for the first time suggested to respondents that, in order to secure a reservation of land for park purposes, it was required that an association should be formed which should consist of property owners in the adjacent subdivision who would assume the burden of maintaining the tract to be conveyed for park purposes. Since it was made evident that no reservation of land in the canyon for park purposes had theretofore been made and it was clearly announced that none would be made until an association of property owners had been formed, the difficulty of procuring a site for the hundred acre park that would be mutually agreeable to the corporation and the proposed association is apparent. Assuming that the association were formed and proceeded to select a site in the canyon for the park, the corporation which retained full dominion and control over the land in the canyon might not agree with the selection or any selection that might be made so that the practical result would be that no reservation for park purposes would ever be made. The uncertainty of the program suggested in the above-mentioned letter indicates the incorrectness of appellant's contention that a reservation of land had in fact been made because appellant's directors had discussed the matter

and had agreed among themselves that such a reservation would be made at some undetermined time in the future.

Appellant's contention that respondents had waived whatever right they might have had to the remedy of rescission by making payments under the contract after they had knowledge of the alleged fraud which formed the basis of the present action deserves but slight consideration. The trial court found that the first notice which respondents had that the one hundred acres had not been set aside or reserved was conveyed to them about July 14, 1932, which was the date on which the letter mentioned in the preceding paragraph was addressed to the property owners by appellant's president. The record indicates that this finding is not vulnerable to attack on the ground of evidentiary nonsupport. The record is bare of evidence tending to show that respondents made any payment under their contract after the contents of the aforesaid letter were made known to them. It is appellant's contention that a letter addressed directly to respondents on June 7, 1932, by appellant's president gave them notice and that two payments were thereafter made under the contract by respondents, the dates of such payments being June 8, 1932, and July 11, 1932. It is conceded that the evidence did not with certainty establish that the payment of June 8th was made after receipt of the last-mentioned letter but it is maintained that the payment of July 11th was made long after receipt of the letter and eleven days after the canyon was closed on July 1, 1932. The letter on which reliance is thus placed is as follows: "Due to cost of maintenance and stringency of the times we will have to close the canyon on and after July 1st, 1932. We regret this very much but trust that you will bear with us and appreciate the position we are in." It is at once apparent that this letter contained no intimation that the representation respecting the reservation of the hundred acres for park purposes was not true. It may not therefore be successfully argued that the communication so clearly conveyed notice of the falsity of the representation that the single instalment payment thereafter made operated as a waiver of the fraud which the court found was perpetrated on respondents. Furthermore, even if it be assumed that the above-quoted letter did amount to notice of the falsity of the representation, respondents were fully justified in paying the July instalment without subjecting themselves

to the penalty which the doctrine of waiver would place upon them. Respondents were entitled to preserve their rights in the property so that they might be in a position to tender it back if they should rescind the contract. (*Munson* v. *Fishburn*, 183 Cal. 206, 215 [190 Pac. 808] ; *Sutton-Watts* v. *Sarnow*, 80 Cal. App. 91, 96 [251 Pac. 654].)

Appellant strenuously objects to the trial court's judgment permitting rescission and recovery of the amount paid under the contract for the further reason that the parties are not thereby restored to the positions which they occupied at the time the contract was executed. In this connection, it is pointed out that the evidence showed that the land had depreciated in value during the four-year period which intervened between the date of the original contract and the date on which the action for rescission was commenced. The price agreed to be paid for the lot under the contract was $4,750. The respondent Jim Shirreffs testified that if the representation respecting the reservation of land for park purposes had been true the lot would have been worth the agreed price at the time of purchase but that the falsity of the representation depreciated its value at the time by $1,000 to $1,200. Appellant's evidence indicated that the lot had a value of $4,750 at the date of purchase without regard to the truth or falsity of the representation. It is declared that the undisputed evidence showed that at the time the present action was instituted on September 12, 1932, the lot was worth about $2,000 irrespective of whether or not the representation was true or false. It is therefore declared that the cardinal principle of restoration is not and cannot be effected by permitting respondents to return property which has depreciated in value more than 50 per cent when appellant is compelled to return the full amount paid to it under the contract which was shown to be the sum of $4,998.27, including interest paid on deferred payments. The inequity of the decree is declared to be further magnified by reason of the fact that the money which respondents will receive had a much larger value at the time the action was commenced in 1932 than it had at the time of payment in 1928. It is suggested that the money was worth 60 per cent more in 1932 than in 1928 and it is therefore declared that by the decree respondents are allowed to recover an amount which is equivalent to approximately $8,000 under the dollar measuring standard of 1928 and appellant is com-

pelled to take back a parcel of land whose value at the time the remedy of rescission was sought amounted to no more than $2,000.

This contention is devoid of any merit. In the first place, it entirely fails to take into account the undisputed fact that the entire purchase price was not paid in the year 1928. The evidence showed that the sum of $500 was paid on June 1, 1928, the date of the execution of the sale agreement and on July 1, 1928, a further sum of $800 was paid. Thereafter payments of monthly instalments of $50 plus interest were made until July 16, 1929, when a payment of $650 was made on the principal of the purchase price. On August 1, 1929, a further payment of $150 to apply on the principal was made. The monthly payments of $50 plus interest were then resumed and continued until July 9, 1930, when a payment of $250 to apply on the principal was made. The last-mentioned payment reduced the amount then due on the principal of the purchase price to $1,400. On July 9, 1930, a new arrangement was made between the parties. Appellant deeded the lot to respondents, who thereupon executed a promissory note in appellant's favor for $1400 and to secure payment thereof they executed a deed of trust to the property in favor of appellant as beneficiary. Thereafter respondents made monthly payments of $40 plus interest on the aforesaid note until July, 1932. That portion of appellant's argument which is based on the assumption that the entire purchase price was paid in the year 1928 therefore falls in view of the above-described evidence respecting the manner in which payment of the purchase price was actually made.

Equally unimpressive is that part of appellant's argument which is based on the fact that the value of the lot had depreciated more than 50 per cent in value between the date on which the contract of purchase was executed and the date of the institution of the action. Appellant entirely overlooks a fundamental principle applicable to the character of action which was here instituted. This is not an action wherein respondents affirm the contract but seek damages alleged to have been caused by appellant's fraud. It is an action for rescission wherein complainants disaffirm the contract and seek recovery of all money paid by them under its provisions. Rescission goes back to the date of the contract which is sought to be rescinded. Whatever fraud was committed oc-

curred at that time. The marked depreciation in value of the land which took place since then is not chargeable to respondents. (*Goodrich* v. *Lathrop*, 94 Cal. 56 [29 Pac. 329, 28 Am. St. Rep. 91].) Attention may also properly be called to the fact that the value of the money which appellant is required to pay back to respondents has likewise suffered a marked depreciation in value since the dates of payment. (*Shaffer* v. *Security Trust & Savings Bank*, 4 Cal. App. (2d) 707 [41 Pac. (2d) 948].)

■ Appellant urges that the evidence shows that respondents were guilty of laches and that the action is in fact barred by the statute of limitations. This contention is based on the fact that four years elapsed after the contract was executed and before respondents gave notice of rescission during all of which time it is declared the means of knowledge were open to respondents, who gave no hint that they suspected that any false representation of any character had been made to them. Unfortunately for appellant, the trial court specifically found that ''in order to further mislead and deceive these plaintiffs and other purchasers of said lots or estates'' appellant ''permitted the said plaintiffs and said purchasers to use said canyon and picnic grounds at all times until on or about the first day of July, 1932, at which time it closed said canyon to the use of said plaintiffs and said purchasers''. Examination of the record discloses the presence of evidence sufficient to support the finding which furnishes a complete answer to the argument. Certainly, so long as appellant permitted to respondents and other lot owners free access to and unlimited use of the entire canyon there was no occasion for respondents to inquire as to the truth or falsity of the representation. Notice of rescission was given on July 23, 1932, and the action was instituted on September 12, 1932. The question of laches was one for the trial court to determine. It has done so by specifically finding that they were not guilty of laches. It is our conclusion that the finding has ample evidentiary support. The related contention that the action was barred by the statute of limitations depends on the date of discovery by respondents of the fact that the representation was false. The court's finding that respondents did not discover the fraud sooner than July 1, 1932, is not lacking in evidentiary support. The suit was brought less than three months there-

after. The claim that the statute barred the action is not therefore sustainable.

Appellant's final contention is that the trial court erred in permitting recovery of interest at the rate of 7 per cent on the money paid by respondents under the contract of purchase. The record shows that the trial court found that respondents had been damaged by the false and fraudulent representation of appellant in the full sum of $4,998.27, together with interest thereon as set forth in paragraph VIII of the complaint. Reference to the specified paragraph discloses that it is there alleged that respondents were damaged in the above-mentioned amount "together with interest thereon from the dates of the payment of the instalments as set forth in said 'exhibit B' at the rate of seven per cent (7%) per annum". Exhibit B attached to the complaint is a copy of the original contract of purchase entered into between respondents and appellant. The court carried into its conclusions of law the allowance of interest by declaring therein "That the plaintiffs are entitled to judgment in the sum of four thousand nine hundred ninety eight dollars and twenty-seven cents ($4998.27) together with interest thereon from the dates of the instalment payments as set forth in the said complaint at the rate of seven per cent (7%) per annum." The judgment orders that respondents recover from appellant "the full sum of six thousand one hundred seventy six dollars and fifty-seven cents ($6176.57)". Subtraction of the sum of $4,998.27 claimed by respondents, exclusive of interest, from the total amount of the judgment demonstrates that the trial court permitted recovery of the sum of $1178.30 as interest on the various instalment payments made by respondents under the contract of purchase. In so doing the court erred. In an action of this character the law awards interest upon money only from the time it becomes due. The action here instituted by respondents was not based upon any provision of their contract of purchase. They sought recovery of the purchase price on the theory that appellant had received money rightfully due them because of a failure of consideration which was caused by a false representation. Until respondents gave notice of rescission nothing was due and the allowance of interest for any period of time prior to the giving of notice was incorrect. (*Hayt* v. *Bentel,* 164 Cal.

680, 686 [130 Pac. 432]; *Taber* v. *Piedmont Heights Bldg. Co.,* 25 Cal. App. 222, 230 [143 Pac. 319]; *Knight* v. *Bentel,* 39 Cal. App. 502, 511 [179 Pac. 406]; *Wilson* v. *Rigali & Veselich,* 138 Cal. App. 760, 768 [33 Pac. (2d) 455].)

The cause is remanded, with directions to the trial court to correct its findings and conclusions of law in accordance with the views expressed herein and to modify the judgment by deducting from the total amount allowed to be recovered therein the sum of $912. As so modified the judgment shall stand affirmed.

Barnard, P. J., and Marks, J., concurred.