[Civ. No. 13708. Second Dist., Div. One. Sept. 28, 1942.]

JULES ALTMAN, Appellant, v. GREGSON BAUTZER, Respondent.

William Ellis Lady for Appellant.

Bautzer & Ryan and Robert E. Ford for Respondent.

WHITE, J.—This is an appeal by plaintiff from an adverse judgment rendered in an action brought to recover the sum of $4,000 and interest thereon.

The factual situation leading up to and forming the basis of this litigation may be thus epitomized: Maier Brewing Company, a corporation doing business in the city of Los Angeles, employed plaintiff over a period of years. In 1936 an involuntary bankruptcy proceeding was filed in the United States District Court for the Southern District of California, Central Division, against the brewing company. This proceeding was pending for some time, including the year 1938. In such bankruptcy proceeding plaintiff had filed a claim in the amount of $196,709.05, which claim, it was stipulated at the trial, was on January 15, 1938, disallowed for the sum claimed, but allowed as a general claim in the bankruptcy proceeding in the sum of $4,500. It was further stipulated that during the year 1941 plaintiff filed a claim against the brewing company for said sum of $4,500.

During the year 1938, defendant was president of Maier Brewing Company. Following negotiations between plaintiff and defendant looking toward a settlement of the former's claim against the brewery, a written agreement was entered into between the parties to this litigation on January 6, 1938, wherein it was recited that defendant had purchased all of the stock of Maier Brewing Company from the receiver of

the estate of Edwin R. Maier, alleged bankrupt, then also being administered in the United States District Court aforesaid. The agreement between the parties also provided that plaintiff agreed to sell to defendant and the latter agreed to buy plaintiff's claim filed in the brewing company bankruptcy proceeding, as well as all other claims plaintiff might have against such concern. In consideration therefor, defendant agreed to deliver to plaintiff a promissory note of Maier Brewing Company in the sum of $4,000, payable on or before three years from the date of its execution, a copy of the note to be so executed and delivered being attached to the agreement and marked "Exhibit A." There also appears on the proposed note the following: "I hereby guarantee payment of the within note and waive presentment and notice of protest of nonpayment. (Signed) Gregson Bautzer." The note, however, was never executed or delivered. By the terms of the aforesaid agreement, defendant further contracted to and did pay to plaintiff's attorney the sum of $500 on account of professional services rendered by such attorney to plaintiff. The agreement further contained certain provisions, not here pertinent, by which the note might be liquidated otherwise than by payment of the amount thereof. The contract also contained the provision that defendant would deliver to plaintiff "at the time of the delivery of said promissory note referred to in par. 2(a) hereof, a resolution of the board of directors of Maier Brewing Company authorizing the execution and delivery of said note."

There was also attached to the above mentioned contract another agreement, marked "Exhibit B," in which Maier Brewing Company as first party agreed to employ plaintiff, named in such contract as second party, in the capacity of sales agent and representative for a period of five years from and after the date of the termination of the bankruptcy proceedings then pending against the brewery and the discharge of the receiver thereof. It was further stipulated that the brewing company would pay to plaintiff herein a salary of $125 weekly. The contract further provided that the brewing company should have the right to terminate said employment upon payment of certain sums of money according to the length of time elapsing between the execution of the contract and the date of such cancellation thereof. This agreement, marked "Exhibit B," further provided: "The execution and delivery of this agreement shall *ipso facto* re-

lease and discharge first party of any and all claims of second party against it, based upon the promissory note for Four Thousand ($4,000) Dollars of even date herewith, executed and delivered by first party to second party, and said promissory note shall concurrently with the execution hereof, be surrendered and delivered up to first party by second party and duly cancelled.''

Upon sufficient, competent and material evidence, the trial court found that it was intended by the parties that the promissory note mentioned in the agreement of January 6, 1938, would be executed and delivered within a reasonable time after the execution of the contract; that said promissory note was never at any time delivered to plaintiff by the Maier Brewing Company nor by defendant, nor by any other person or corporation on behalf of either; that said agreement of January 6, 1938, did not express the agreement which plaintiff intended to sign and believed at the time he was signing. The court found that it was the understanding and belief of plaintiff, at the time he executed the last mentioned agreement, that such document constituted an agreement of employment, when in truth and in fact the same was but a form of agreement which, according to the terms of the same, might or might not have been executed at a future time, in the discretion of the brewing company. It was also found that had plaintiff realized or been apprised of the fact that the agreement of January 6, 1938, made no binding provision for his employment according to the terms of said document attached and marked ''Exhibit B,'' he would not have entered into or signed the January 6 agreement. The court found, and it was stipulated and conceded at the trial, that in the month of October, 1938, some nine months after the execution of the January agreement, plaintiff caused to be prepared and served upon defendant a notice of rescission, a copy of which was introduced into evidence at the trial. It was further found that such notice of rescission was served by plaintiff when for the first time he learned that the agreement was not a contract of employment as ''contemplated by him and understood by him'' at the time of its execution. It was further found that thereafter, on or about December 5, 1938, plaintiff caused to be prepared and served upon the defendant and upon the brewing company a second notice of rescission, which was identical in words and figures with the notice of rescission filed in October of the same year.

The court found that during the period from January 6, 1938, to and including approximately December of 1940, or January of 1941, defendant was president of the brewing company; that during such period he was in a position to provide for the full and complete performance of the agreement made with plaintiff on January 6, 1938, but that upon receipt of the notice of rescission dated October 14, 1938, which among other things contained implied charges on the part of plaintiff that defendant and plaintiff's attorney were guilty of fraud, deceit, duress and undue influence, defendant considered the agreement as being fully rescinded and terminated, and thereafter of no force or effect whatsoever; that thereafter neither said defendant nor said Maier Brewing Company did anything or made any provision for the performance of said rescinded agreement, nor did they or either of them oppose in any way the action of plaintiff in asserting ownership "of his original claim in the sum of $196,709.05." In short, therefore, the court found and concluded that subsequent to the action of plaintiff in serving notices of rescission upon defendant as president of the brewing company, the latter was in a position to provide for the full and complete performance of the agreement of January 6, 1938, but that by reason of the notice of rescission defendant treated the contract of January 6, 1938, as a nullity and did nothing whatever to provide for the performance thereof; that the note provided for in the agreement of January 6, 1938, was neither executed nor delivered to plaintiff, and that the contract of guaranty on the part of defendant contemplated by the agreement of January 6 was never executed.

From the aforesaid findings the court concluded as a matter of law not only that the note contemplated by the agreement of January 6, 1938, was never delivered, but that such agreement was rescinded and terminated by plaintiff under the provisions of section 1689 of the Civil Code, and "that by mutual consent of plaintiff and defendant the agreement of January 6, 1938, was abandoned and rescinded." Further, "that plaintiff is estopped to deny that said agreement of January 6, 1938, was rescinded by him and abandoned by mutual consent."

The evidence supporting as it does the conclusion reached by the trial court that appellant rescinded the agreement of January 6, 1938, and that respondent acted upon such rescission, it follows that the agreement upon which this action

is founded became a nullity. Under the law, it is not necessary that one who has a right to rescind must turn to the courts to accomplish the rescission. He may effect such rescission by his own act, as did appellant here. (*Philpott* v. *Superior Court*, 1 Cal. (2d) 512, 524 [36 P. (2d) 635, 95 A. L. R. 990].) When appellant elected to rescind the contract of January 6, 1938, such contract and each of its terms and provisions ceased to be a subsisting or enforceable obligation against Maier Brewing Company or respondent. If the parties with whom appellant contracted breached their contract or secured its execution through fraud, then after rescission by him there remained to appellant only the right of action for damages for such breach or fraud. By his action in rescinding and terminating the contract, appellant was foreclosed from seeking the fruits of such contract.

However, appellant seeks to avert the consequences ensuing from his rescission upon the ground that he failed to give the notices thereof promptly, and that they were therefore ineffectual. In other words, appellant attempts to invoke the doctrine of laches when he alone was guilty thereof. This he cannot do; and especially when, as here, at the time appellant elected to and did rescind, and subsequent thereto, respondent as president of the brewing company was in a position to and could have provided for payment of the obligation contained in the rescinded agreement, but did not do so because of reliance placed by him on the notice of rescission.

Concluding as we do that appellant's conduct in rescinding the agreement terminated his right of action under the terms and provisions of such agreement, it becomes unnecessary to discuss the question raised as to the responsibility of respondent in his capacity as a guarantor. Whatever obligation was imposed upon respondent as a guarantor on the note was extinguished by appellant's action in rescinding the contract which alone gave legal vitality to the note, even though it be assumed that the latter was lawfully and legally executed and delivered.

The attempted appeal from the order denying the motion for a new trial is dismissed, and for the reasons herein stated the judgment is affirmed.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 27, 1942.