[Civ. No. 15005. Second Dist., Div. One. Apr. 19, 1946.]

BEN SIEGEL et al., Appellants, v. THOMAS H. A. LEWIS et al., Respondents.

Pacht, Pelton, Warne, Ross & Bernhard, Isaac Pacht, Clore Warne and Bernard Reich for Appellants.

Overton, Lyman & Plumb and B. R. Ware for Respondents.

YORK, P. J.—This is an action to recover the unpaid balance of the purchase price of realty under a contract which is evidenced by two sets of corresponding and complementary escrow instructions, one set executed by plaintiffs, as the seller, and the other by defendants, as the buyer.

The escrow herein was opened on June 2, 1944, at the instance of Mrs. Mary Helena Lederer, a real estate broker and the escrow instructions for the parties were prepared upon information furnished by Mrs. Lederer, who on the following day deposited $8,500 in the escrow on behalf of the buyer, as part payment on the purchase price of $85,000. Said defendants, as buyer, agreed to pay the balance of said purchase price on or before August 2, 1944. Buyer's escrow instructions contained the following direction: "Before closing this escrow you will hold for the Buyer a letter or report by an exterminator indicating that the improvements on said real property are free from infestation by termites, dry-rot or fungus."

Prior to the execution of their corresponding escrow instructions, plaintiffs' attorney added thereto the following directive: "In connection with the termite report, the Seller shall have no obligation to obtain such report except to pay the usual and normal charge in connection therewith. If any infestation by termites, dry-rot or fungus is found, *unless such condition is remedied by the Seller, the Buyer may terminate the agreement* to purchase the property as herein set forth."

On June 14, 1944, defendants (buyer) executed a supplemental instruction in order to conform to seller's redraft as above quoted.

On June 22, the exterminator company filed in the escrow its termite report to the effect that the improvements located on the real property described in the escrow instructions were infested with subterranean termites, and that the reasonable cost for remedying said condition was the sum of $350.

Thereafter, on June 29, 1944, plaintiffs (seller) again amended their escrow instructions by the addition thereto of the following:

"At close of escrow you will charge to the Seller and credit to the Buyer the sum of $250.00 in lieu of any termite work, from which the Buyer is to pay the inspection fee of Raymond C. Jones Co. (the exterminator company)."

On July 5, 1944, defendant Thomas H. A. Lewis, by means of a letter addressed to the escrow agent, cancelled the buyer's escrow instructions and terminated the escrow, whereupon plaintiffs instituted the instant action.

The trial court made findings of fact substantially in accordance with the foregoing recital, and in addition thereto found as follows: "It is not true, as alleged . . . that plaintiffs have tendered or offered performance of each and every matter

and thing to be done and performed on their part under said escrow instructions dated June 2, 1944 and June 14, 1944, but it is true that the plaintiffs refused to and elected not to remedy the aforesaid infestation of termites, and made a different and counteroffer and proposal. It is not true that prior to the date when performance was required on the part of plaintiffs, defendants gave notice that they would fail or refuse to perform further under said agreement.''

From the facts, as found, the court concluded as follows:

''I. That the defendants had ample and sufficient cause and basis for and were justified in executing and delivering to the escrow holder their said letter and notice dated July 5, 1944, terminating and cancelling said escrow and escrow instructions.

''II. That said escrow and escrow instructions and any agreement between the parties hereto set forth and contained therein, were properly terminated and cancelled by said letter and notice.

''III. That the plaintiffs are not entitled to a judgment against the defendants or to recover any sum whatsoever or any interest from said defendants or either of them. . . .''

From the judgment which followed, plaintiffs prosecute this appeal.

Appellants here contend that the ''court erred in finding that the plaintiffs refused to and elected not to remedy the termite infestation.'' They urge that the amended escrow instructions of June 29th were no more than a reduction to writing of a prior understanding that the buyer was to bear $100 and the seller $250 of the cost of correcting the termite condition. With respect to such cost, the record discloses that Mrs. Lederer discussed this matter with Mr. Ross, attorney for appellants, but at no time did Mr. Ross inform Mrs. Lederer that the appellants would pay the $350 to be paid to the exterminator. Meanwhile, Mr. Ross did discuss the matter with Mr. Siegel, who agreed with Mr. Ross that $350 was too high.

When the original buyer's escrow instructions were executed, respondent Thomas H. A. Lewis was in the service, and upon his return home on June 17, 1944, he called at the office of the escrow holder where the termite provision in the escrow instructions was explained to him, to wit:

''Mr. Pattillo showed me this document; explained to me that it was the right of the seller not to remedy the termite work; and he referred me to another document, which was another amendment to the escrow, and referred again to his explanation of that to me, that it was within the seller's

right—he could elect not to remedy any work of the termites, and he pointed out to me another provision in that same document and said, 'In turn, I again refer you to our conversation, that you have an election not to buy, unless, of course, you wish to buy with the responsibility of the termites.' " Said respondent also saw the termite report at this time.

Thereafter the escrow holder notified Colonel Lewis of the seller's amended instruction of June 29th, and he went to the bank to discuss such amendment with Mr. Pattillo, to wit:

"Q. Did Mr. Pattillo talk to you about it? A. Yes. Q. Did he tell you who brought it in? Did he say anything about that? A. He said Mr. Ross brought it in, . . . Q. Did Mr. Pattillo tell you that the Siegels asked you to pay a part of the charge of freeing the property of termites? A. He didn't phrase it that way. He said that they had declined to free the property of termites in whole, although they had submitted some compromise, I understand. . . . Q. Did he say they gave any other instructions relative to termites except this Exhibit C (instruction of June 29)? A. No. The only thing I heard on that was the statement I previously referred to, from Mrs. Lederer, that they refused to do it, that was in total. The next thing that occurred as the definite thing, this paper, that was that they refused to clear it in part, refused to clear it completely. . . . Q. Did you understand this to be a proposal to modify your arrangement as to the sale in the particulars provided for in this memorandum? A. I understood it as a repudiation of the contract. Q. Who told you that, anybody? A. Mr. Pattillo. Q. Mr. Pattillo said that this document in the form it was handed to them constituted a repudiation of the contract? A. Constituted an abrogation of the escrow, something of that sort, and that there was now no contract, unless I wished to re-enter an agreement and sign such an agreement as that."

In reply to a question as to whether he was concerned with any other matter than the statement contained in the amended escrow instruction of June 29th, Colonel Lewis stated: "Well, I must say it made me lose confidence in the deal, so I must be honest and say yes. The Siegels were selling the house and didn't want to accept the responsibility, which was normal, to see that it was free and clear of termites; that they were willing to pay $250, but not accept the responsibility of even the matter between that and the complete cost; and I must be honest and say to you that I did not feel at all sure that the termite work would be limited to that."

Mrs. Lederer testified that within a week subsequent to June 22d, the date of the termite report, she had a conversation with appellants' attorney, Mr. Ross, in which she stated that she "would try to get Colonel Lewis to pay $100, and if he didn't, I would rather pay it than to lose my client, because I couldn't afford to." Also, that she did not hear from Mr. Ross again and did not discuss the matter with either Colonel Lewis or Mrs. Lewis.

Mr. Ross, however, testified that he had a conversation with Mrs. Lederer on the day the amended escrow instructions were prepared, to wit: June 29, 1944; that Mrs. Lederer called him "and wanted to know if we had come to any decision about the termite work and its being done. I told her I was waiting for some word from her and she said, 'Well, the best I can do is to get the Lewises to pay $100. You will just have to pay the rest.' I told her that that was agreeable, and she said, 'Well, for God's sake, get the papers signed and get going, because we have to get this thing settled. Mrs. Lewis wants to be sure she can get into the house on August 2nd.' And I told her I would. . . . I told her I would see the papers were prepared accordingly."

In the face of such conflicting evidence, it became a question of fact for the trial court to determine whether the escrow instruction of June 29th was the result of an understanding between the parties. The court found against appellants on that question when he found that they "refused to and elected not to remedy the termite infestation," which they had a perfect right to do under the terms of the seller's original escrow instructions, hereinbefore quoted. Those instructions also gave to the buyer the right to terminate the contract to purchase unless the termite infestation was remedied by the seller. The escrow instruction of June 29th expressly limited seller's liability to $250 although the exterminator estimated it would cost $350 for the work of remedying the termite condition. Consequently, buyer's notice of cancellation of July 5, 1944, was an effective termination of the contract, in accordance with the express terms thereof.

As stated in California Jurisprudence 715: "A vendee of real property may rescind . . . for one or more of the statutory causes, *or for any cause which the contract itself provides shall be ground therefore, regardless of his motives in so doing.* (Citing *Conlin* v. *Osborn,* 161 Cal. 659 [120 P. 755]; *Crim* v. *Umbsen,* 155 Cal. 697, 702 [103 P. 178, 132 Am.St.Rep. 127]; *DeBairos* v. *Barlin,* 46 Cal.App. 665, 672 [190 P. 188].)"

(Italics added.) See, also, *Shirreffs* v. *Alta Canyada Corp.*, 8 Cal.App.2d 742, 747 [48 P.2d 55].

With respect to appellants' contention that they were entitled to avoid on the ground of mistake the instrument pleaded by respondents as a defense to the action, to wit: appellants' amended escrow instruction of June 29th, the record discloses that appellants fully understood when they refused to remedy the termite condition that they were putting it within the power of respondents to withdraw from the contract. The fact that, after respondents cancelled the contract and before the date set for the closing of the escrow, appellants made an offer to, and actually did complete the termite work, does not materially affect the situation. Once an option to terminate a contract is exercised, the contract is extinguished and discharged; it cannot thereafter be revived by the other party through an offer to perform the act, the nonperformance of which gave rise to the option to terminate. See *Altman* v. *Bautzer*, 54 Cal.App.2d 543, 548 [129 P.2d 458]; 17 C.J.S. page 936.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied May 7, 1946, and appellants' petition for a hearing by the Supreme Court was denied June 18, 1946.